Rice v. Morton.

---

RICE, Appellant, *vs.* MORTON *et al.*, Respondents.

1. One defendant is not a competent witness for his co-defendant.
2. The relation of principal and surety or of co-securities is not extinguished by judgment. Thus, where A. recovered against B. & C. as securities in a note, a judgment which was afterwards assigned to D., who directed the sheriff to return an execution issued thereon unsatisfied, when one half of the judgment debt might otherwise have been made out of the property of B., *it was held*, that C. was discharged to the extent of one half of the debt.

*Appeal from Cooper Circuit Court.*

*Adams*, for appellant.   1. The agreement made by Smith and Rice with the creditors, on giving this power of attorney to confess the judgment, whereby the debt was to be collected from each rateably, is such as should be enforced by a court of equity by injunction.   See 4 John. Ch. Rep. 22.   2. The same principles of equity exist between co-securities, to be relieved to the extent of the share of each in the debt, by the acts, &c., of the creditor, as exist between them and the principal, to be relieved of the whole debt, by similar acts, &c., of the creditor with the principal ; and when a creditor, by his acts or otherwise, discharges one surety, or relinquishes a lien, or suffers the same to be lost, against the will or consent of the co-security, he can only hold the other liable for his *pro rata* share of the debt. 1 Story's Eq., sec. 499, (note.)  2 Brockenborough's Rep. 159–168.   5 N. H. Rep. 38.   *The Commonwealth* v. *Hass*, 16 S. & R. 252.   *Mayhew* v. *Crocket*, 2 Swanst. 191–299, (note *a.*)   1 Law Library, 84–85–153. Theobald on Prin. and Security, secs. 174–274.   2d Am. Leading Cases, 126, &c.   1 Story's Eq., sec. 326 and 499. *Ferguson* v. *Turner*, 7 Mo. Rep. 497.   3. Morton being the assignee of the judgment, took it subject to all the equities existing between the original parties, and also subject to all the equities arising out of his own acts and conduct.   4. The first execution was issued and delivered to the officer, before the expiration of three years from the date of the judgment, and this, of itself, without any revival of the judgment, continued the lien against the real estate of Smith, till the return of the execution ; and this lien was voluntarily relinquished by Morton. *Bank of Missouri* v. *Wells & Bates*, 12 Mo. Rep. 361–3–4.   The doctrine of substitution does not apply to a case of this kind, and if it did, it would not debar Rice of his remedies against Morton, for the loss of the lien against Smith's property.   Rice could only have been substituted to such securities as do not get back to the debtor on payment—

Rice *v.* Morton.

such as mortgages or other collaterals. When a judgment is paid, it cannot be assigned, nor can there be any substitution; for the debt is extinguished by the payment. The old doctrine on this point has been overruled. 1 Story's Eq., 4 ed., sec. 499, (*b.*) 6. Trigg was an incompetent witness, and ought to have been excluded. He was interested, and also a party defendant, and could not be examined by the defendants by their motion. Laws Mo. 1849, p. 100. 7. Morton bought of Smith's property under junior judgments, and in consequence of the existence of the lien of this judgment, bought it at a less rate, by half the amount of this judgment, than he would otherwise have paid; and an injunction, therefore, to to the extent of half this judgment, ought to be granted.

*Leonard* and *Hayden*, for respondent. I. The allegation in the petition in relation to the understanding of the parties, at the time of giving the power of attorney, furnishes no ground of relief, because, 1st, It was not a valid agreement— there was no consideration, and equity will not enforce a mere voluntary agreement; 2d, If it could be considered a good parol contract, to the effect that each surety should be liable only for one half of the debt, such an agreement would contradict the written instrument, which was an authority to take a joint judgment against both for the whole debt. II. The admission of Trigg, a witness, upon the trial, is no ground for a reversal. His testimony relates exclusively to the supposed agreement for the collection of the judgment rateably against the sureties; and if this agreement stands admitted by the omission to deny it, or if it is not a matter contested between the parties, the testimony is wholly immaterial, and could not have prejudiced the party, and its admission furnishes no ground for a reversal of the judgment. IV. The relation of principal and security does not exist between co-securities, so far as the creditor is concerned, and therefore, acts of the creditor that will discharge a security from his liability to the creditor for the whole debt, will not discharge a co-security from a proportional part of it. *Dunn* v. *Slee*, Holt's N.

P. Rep. 399, reported in 3 Eng. C. L. Rep. 141. V. A judgment against the principal and security, extinguishes the relation of principal and security, and the security then becomes himself a principal debtor. *Laforge* v. *Hester*, 3 Denio, 157. *Hubbell* v. *Carpenter*, 2 Barb. 487. *Bay* v. *Talmadge*, 5 John. Ch. R. 305. *Lenox* v. *Prout*, 3 Wheat. 520. *Pole* v. *Ford*, 2 Chit. R. 125, (18 Eng. C. L. Rep.) *Findlay's Ex'rs* v. *Bank of the U. S.*, 2 McLean's Rep. VI. A security is not discharged by the creditors allowing the lien of a judgment to become extinct by the lapse of time. *U. S.* v. *Simpson*, 33 Penrose & Watts (Penn.) Rep. 439. *Morrison* v. *Hartman*, 14 Harris' (Penn.) Rep. 58. *Cathcart's Appeal*, 13 Harris' (Penn.) Rep. 420. *Schroeppell* v. *Shaw*, 3 Comstock's (N. Y.) Rep. 452.

RYLAND, Judge, delivered the opinion of the court.

This was a civil action, brought by Rice in the Cooper Circuit Court, against George W. Morton, Charles W. Todd, Charles H. Smith, and against Jordin O'Bryan, Thomas W. Nelson and William H. Trigg, the last three as ·executors of Jacob Wyan, deceased. The petitioner charges, that he and the defendant, Charles H. Smith, became the sureties of the defendant, Todd, in a note to the firm of Wyan & Trigg, executed on the first day of January, 1842, for three hundred dollars, due in six months, with ten per cent. per annum from date. The firm of Wyan & Trigg was composed of Jacob Wyan and William H. Trigg; that, after making said note, Wyan departed this life, and Trigg, as surviving partner, assigned the same on the 2d day of July, 1842, to Jordin O'Bryan, Thomas W. Nelson and himself, as executors of said Jacob Wyan, deceased; and that afterwards, at the November term, 1842, of the Circuit Court of Cooper county, in the state of Missouri, a judgment was rendered in said court in favor of said Jordin O'Bryan, Nelson & Trigg, executors of Wyan, against the said defendants, Todd and Smith, and the peti-

tioner, Rice, for the amount of said note and interest. The plaintiff, in his petition, alleges that this judgment was afterwards revived at the September term, 1845, of the said Circuit Court of Cooper : he makes an exhibit of the transcript of said judgment, and of the revival thereof, containing three executions, a copy of the note and of the assignment thereof. The plaintiff states that, afterwards, the said defendant, George W. Morton, became the assignee of the said judgment, and took the control and management thereof, before any execution thereon was issued, as he, plaintiff, believes and charges. The plaintiff states further, that Todd, the principal in said debt, at the time the judgment was rendered, and ever since has been, and is now, wholly insolvent, and unable to pay any portion of said judgment ; but that said Smith, who was co-security of the plaintiff, had ample real estate situated in the county of Cooper, where said judgment was rendered, to pay and satisfy his half of the said judgment, and the said judgment was a lien thereon, and so continued until the same was lost by the voluntary act of the defendant, Morton, in refusing, though urged and solicited by the plaintiff, to have the said real estate levied on and sold during the pendency of the said lien. The plaintiff further states that, after the rendition of the said judgment, and during the pendency of the said lien, other judgments were rendered against said Smith, which were junior to the aforesaid judgment, and upon which junior judgments, under executions thereon, all the real estate aforesaid, of the said Smith was sold, subject, however, to the lien of the first named judgment ; and no property of any kind, real or personal, of the said Smith was left, out of which his share of the first named judgment could be made, except the real estate which had been sold under said junior judgments and executions ; and the said Smith became, and was, after the sales aforesaid, and still is, wholly insolvent and unable to pay his half of said judgment ; and although the said sales were made subject to the said elder judgment, and the said Smith's part of said elder judgment might, and ought to have been made out

of the said real estate, yet, the said Morton voluntarily relinquished the said lien, by refusing to have the said real estate sold under said elder judgment, to the extent of Smith's half thereof, and by wilfully and voluntarily causing the said executions, issued on said judgment, to be returned not executed, until the sales under said junior judgments have ripened into perfect titles. The plaintiff charges that Morton, contrary to the principles of justice and equity, and from some unjust cause or other, desired to make the whole amount of the debt out of the plaintiff, after he (Morton) had obtained the control of said judgment, well knowing, at the same time, that Smith was, in law and equity, bound for one half thereof; and that Morton, for this purpose, caused an execution, number "one," to be issued on said judgment, on or about the 11th of October, 1845, and placed the same in the hands of Isaac Lionberger, the then sheriff of Cooper county. Plantiff states that then he was ready and willing, and offered to pay his half of said judgment, insisting and urging the said Morton to make the balance out of the said real estate of the co-security, Smith, which was then liable thereto, and subject to the lien thereof; but Morton refused to do this, and voluntarily caused the said sheriff to return the said execution without any action thereon.

The plaintiff states, that the said Morton, afterwards, on the 16th of April, 1846, caused another execution to be issued upon said judgment; that he again urged Morton to levy one half of the same, being Smith's part thereof, on the said real estate, and to carry into execution, against said real estate, the lien of said judgment to that extent. The plaintiff avers, that Isaac Lionberger, the sheriff of Cooper county aforesaid, was willing to do this, and was about to make the levy, when Morton, fraudulently and voluntarily, ordered the sheriff to hold up the execution, and not to levy the same; and when the term of office of said Lionberger, as sheriff, was about to expire, Morton caused him to make such return on the execution, which he did, and delivered the execution over to his successor, James

Hill, who offered to levy the same upon said real estate, but Morton prevented him from doing so, and ordered Hill to return the said execution, not executed, which he did accordingly.

Plaintiff states, he offered to pay one half of said judgment to said Morton, but Morton refused to receive the same. Plaintiff then, with a view always to have in Morton's hands a fund to meet his half of said judgment, did, on the 10th day of August, A. D. 1846, put in Morton's hands the sum of two hundred and twenty-five dollars, as and for half of said judgment, and took a note from Morton, making it draw the same rate of interest as the judgment, with the understanding that Morton might, at any time, extinguish the note, by applying the same as a credit to plaintiff on said judgment. A copy of the note is made an exhibit, the original having been delivered up to Morton.

The plaintiff furthes charges, that execution number "three" was issued on said judgment on the 23d day of September, 1846, whilst the lien of said judgment was still in force : the plaintiff still urged Morton to have the same levied upon the said real estate : the sheriff was willing, and offered to levy the same upon said real estate, but Morton refused to permit him to do this, and fraudulently and wilfully required the sheriff to return the same not executed, which was done accordingly. The plaintiff charges, that Morton grossly neglected and wilfully refused to have the said lien of said judgment carried into execution against said real estate, and by this fraudulent conduct, and gross negligence, the lien of said judgment has been lost, and the sales under said junior judgments have ripened into perfect titles, leaving the said Smith wholly insolvent and without any means whatever, to answer over to the plaintiff, in case he be compelled to pay the same ; that Morton, by his fraudulent conduct and gross negligence, has released Smith from the payment of his half of said judgment.

The plaintiff states, that it was the understanding of the parties, when the power of attorney was given to confess the judgment, and after the judgment was confessed, that the same

was to be paid by the plaintiff and the said Smith, rateably, each paying one half, as the said Todd was wholly insolvent; and it was with a view to carry out this intention that the judgment was revived; and avers that, if the control of the judgment had remained in the hands of the original parties, this intention would have been carried into effect; but the said Morton, well knowing the premises, had fraudulently prevented the lien of said judgment from being carried into effect against the property of said Smith. Plaintiff states that, in fact, he has been informed, and charges, that said Morton, not only knew of said junior judgments, and of the sales thereon, but actually became a purchaser at such sales, and had full knowledge of the circumstances, both of the said Todd and of the said Smith; and that, unless the lien of the elder judgment was carried into execution against said Smith's real estate, nothing could be made out of them or either of them, and with this knowledge, and under these circumstances, being interested himself in the sale of Smith's property, he fraudulently and wilfully refused, and grossly neglected, though often urged so to do, to have said lien carried into execution, and by his conduct and acts aforesaid, the same has been lost.

The plaintiff states that, since the said lien has been lost, the defendant, Morton, has caused an execution, number "four," to be issued on said judgment, which was issued on the 28th of January, A. D. 1850, and threatens to have the same levied on plaintiff's property; plaintiff states that, since the issuing of said last execution, he went to Morton and delivered up to him his note, in discharge of plaintiff's half of said judgment, and offers, if that amount be not the half, to pay whatever may remain, prays for an injunction, &c., and other relief in general.

The defendant, Morton, answers this petition at great length, much of which is not necessary to be noticed in this opinion; a portion of the answer must be noticed, however, for the very guarded manner in which defendant responds to important allegations in the petition.

The statute requires that the answer, in respect to each allegation in the petition controverted by the defendant, shall contain a *specific denial thereof, or of any knowledge thereof sufficient to form a belief.* Art. 6, sec. 7, New Code of Practice. And every material allegation in the petition, not specifically controverted in the answer as required, *shall, for the purposes of the action, be taken as true.* Article 7, section 12, same code.

Morton begins his answer by stating that, of *his own knowledge,* he does not know whether Charles H. Smith and the plaintiff, Rice, as the securities of Charles W. Todd, on the first of January, 1842, executed to Wyan & Trigg the note for the payment of $300, with ten per centum interest per annum, as stated by the plaintiff. He admits that the note was made by Smith, Rice and Todd, to Wyan & Trigg, at the time mentioned, and for the sum therein mentioned, but he has no *personal knowledge* that Todd was principal, and that plaintiff and Smith were securities, and of this he requires strict proof. He admits the recovery of the judgment in the Cooper Circuit Court by O'Bryan, Nelson & Trigg, against the plaintiff, Smith and Todd, at November term, 1842, for the debt and interest, as mentioned in plaintiff's petition, but states as follows : " That this defendant does not know, nor hath he any personal knowledge that, at the time judgment was confessed by the plaintiff, Todd and Smith, that they, Smith and plaintiff, agreed that each one of them would pay, as securities, his equal moiety of the judgment, as the plaintiff hath stated in his said petition ; and having no personal knowledge of such arrangement between plaintiff and Smith, that defendant requires strict proof thereof, if such agreement was made."

These statements in Morton's answer are not sufficient ; they are not such denials as the statute contemplates, and the allegations in the plaintiff's petition, to which these statements were designed as answers, are to be considered, for the purposes of this action, as true.

The defendant, Morton, admits that, after the rendition of

the judgment against Todd, Smith and Rice, the plaintiff, there were other judgments rendered by the Cooper Circuit Court against said Smith, and then, in his answer, mentions the various judgments against Smith, which it is not necessary here to state. He admits that an execution was issued on one of these judgments, on Brown's judgment, and was levied on property of Smith's, both real and personal, some time in October, 1844, and that in March, 1845, in virtue of a *venditioni exponas*, the property levied on was sold, and he, the defendant, did purchase at this sale a lot of land of the said Smith, at the price of $225, and that other persons purchased other lands levied on. He admits that the judgment against Todd, Smith and plaintiff, in favor of O'Bryan, Nelson and Trigg, was the oldest judgment against said Smith, and that it was a binding lien on all the real estate of said Smith in Cooper county, for and during the space of three years from its rendition. He denies that the revival of the judgment is a revival of the lien: he then mentions Smith's contracting, about the 7th day of February, 1844, to sell a part of his real estate to Abraham Hathaway and Jacob Ingraham, for the price of $3,200 ; that sale was made, and that he, defendant, afterwards, on or about the 2d of March, 1845, purchased of said Hathaway and Ingraham, one half the real estate they had before bought of Smith, for the sum of $1600 ; that Hathaway and Ingraham sold the remaining half to Joseph H. January, for $1600, about the same time that the purchase of this defendant of them was made. He then speaks of Tompkins having caused an execution on a judgment junior to O'Bryan, Nelson and Trigg's, but older than the one under which he, the defendant, had bought a lot, to be issued and levied on the real estate which he had purchased of Hathaway and Ingraham, and caused the same to be sold ; and that, at this sale, Ingraham was forced to purchase the said property, in order to secure it to January and this defendant.

This defendant admits that, after this sale, made by Tompkins, of the property which defendant and January had bought

of Hathaway and Ingraham, and which Ingraham had to re-buy, in order to secure this defendant and January in their previous purchases from Hathaway and Ingraham, that Smith, during this time, was the owner of other real estate, to the value of six or seven thousand dollars, which was bound by the liens of the judgments mentioned in his answer. He and the said January did purchase the judgment of O'Bryan, Nelson and Trigg, against Todd, Smith and the plaintiff. He denies that he is the sole purchaser, but admits that he and January bought the judgment : he denies that it was purchased for the purpose of oppressing the plaintiff, or injuring him : he admits that he and January purchased the judgment, knowing it to be the oldest judgment upon record, and binding upon the real estate of Smith, in Cooper county, with a view of protect-ing their aforesaid real estate, held in common, from a similar act of oppression and injustice, which they feared might be ex-erted against it by the said Tompkins, if he should purchase the same, (as he, Morton, feared he would,) by again throw-ing the whole burthen of this judgment also upon their, the said Morton and January's said property. Defendant admits that his individual motive, in addition to the object of himself and January above stated, was to have an execution issued thereon, to be levied on the said real estate, which he had pur-chased at the price of $225, under Brown's execution, fearing that the property so purchased was not sufficiently described and identified by the sheriff's advertisement, under which he made the sale to the defendant, Morton. Defendant, Morton, admits the four several executions ; he has no recollection of causing the execution, number " one," to be issued ; but thinks it was issued prior to his and January's purchase : he admits that he endorsed upon said execution an order to the sheriff, in these words : " The sheriff of Cooper county is requested to return this execution not satisfied, by order of the plaintiff. G. W. Morton, assignee." He says that he and January pur-chased the judgment on the 8th day of December, 1845. De-fendant does not know the precise time he made the endorse-

ment above on the execution, but says he believes it was about the date of the sheriff's return of the execution : he says he has no recollection of the plaintiff's making, at any time during the time the said execution was in the sheriff's hands, any wish or request to this defendant, to have the same levied on the real estate of said Smith, to obtain satisfaction of the same or any part thereof, as plaintiff has charged in his petition. Defendant denies any recollection of having given to the sheriff any directions not to levy the execution on any property of Smith's, or of any of the other defendants therein.

Defendant admits that execution number "two" was issued with his consent : he has no recollection of ordering the issuing of it ; it was issued on the 15th of April, 1846 : he denies any recollection whatever of any thing having been done or said by him to the sheriff in whose hands it was, in regard to his levying or not levying the same upon Smith's property ; or of any thing having been said by plaintiff to him, in which he urged or expressed a wish, or in any manner requested this defendant to cause the same to be levied upon the real estate of Smith, in order to obtain satisfaction of the whole or any part thereof, out of Smith's real estate, before the 10th day of August, 1846 : he says that Rice, about this time, made known to him that the sheriff had called on him for the money or property, in order to satisfy the execution ; then plaintiff, for the first time, stated to him that he was co-security with Smith, and that it was hard for him to pay the whole : offered to pay defendant one half of the debt, and expressed a wish, in substance, that the remainder should be made of Smith. Defendant states that, to these statements of plaintiff, he replied that, when he and January bought the judgment upon him, Todd and Smith, they knew them to be able to pay it, and looked upon them all as principals, and equally bound for the whole debt ; and knew nothing as to the fact of Smith and Rice being securities for Todd, and would have nothing to do with that matter. Plaintiff then proposed to pay to defendant half of the amount of the execution, and have it credited on the same ;

this defendant would not have it credited on the execution, but took the money and gave plaintiff his note for the same, drawing same rate of interest as the judgment ; and defendant says this is all that he recollects in regard to said execution number " two," except that he thinks he may have given the sheriff authority to return the same not satisfied ; but this he does not recollect.

The defendant admits, in regard to the third execution, that he and plaintiff tried to have it levied by the sheriff on the property or lot which he, defendant, had bought, as stated before, for $225, of said Smith, at sheriff's sale ; but failing to do this, and learning from sheriff that he would levy the same on that part of the real estate of Smith which had been last sold ; and finding that to be the property which defendant and January had bought from Hathaway and Ingraham, this defendant refused to permit the sheriff to make the levy and sale of this last mentioned property. Defendant admits that he told plaintiff, Rice, if the sheriff would levy on the lot which defendant had bought at sheriff's sale, for $225, as above mentioned, he, defendant, would guaranty that it should and would sell for the one half of the amount of the execution.

In regard to the execution number " four," the defendant admits he caused it to be issued, but took no control over it, except to tell the sheriff to make the money, and not to levy it on the property which he and January had bought of Hathaway and Ingraham, and that, at the request of plaintiff, he had endorsed upon the execution a credit of $225, as having been paid by plaintiff on 10th August, 1846. Defendant denies ever refusing to permit sheriff to levy any or either of said executions upon the real estate of said Smith, bound by said judgment, when it was rendered, except the real estate which he and January had purchased as aforesaid, and then, only as stated above. He denies that Smith ever requested him to have the executions levied upon the real estate of him, Smith ; denies that either Lionberger or Hill, as sheriffs, or either one, ever did offer to levy said executions upon any other property

of which Smith had been owner, than that purchased by this defendant and January of Hathaway and Ingraham. The defendant states, that he and January did not purchase the judgment, nor have the control of the execution, until after the lien of said judgment had expired, as he believes.

I have thus noticed, at too much length, I fear, the various matters set up by Morton in his answer. Upon this answer coming in, Rice filed his supplemental petition, making January a party.

January failed to answer, although served with process, and judgment by default was taken against him, and the matters alleged in plaintiff's petition taken as confessed against said January.

Morton afterwards filed his amended answer, stating that he was informed, and believes that Rice, the plaintiff, after the rendition of said judgment, procured the delay of the execution of said judgment, by paying to one of the plaintiffs in said judgment an additional premium of three or four dollars; that for this consideration, indulgence was given, and thereby said Smith was absolved from all responsibility as co-security, to pay his aliquot part of said judgment.

The finding of the court below was as follows : " The court finds the issues for said defendants." Judgment was given for defendants. The plaintiff afterwards moved to set aside the finding and judgment, and to grant him a new hearing ; this motion being overruled, the plaintiff excepts and brings the case here by appeal.

The record shows (by the bill of exceptions) that the plaintiff read the exhibits mentioned in his petition in evidence, to wit, the judgment in the case of Wyan's executors v. Todd, Smith and Rice, including the power of attorney to confess said judgment, the revival of said judgment, and the several executions thereon, and the several endorsements on said executions, and a copy of the note delivered up to Morton. Plaintiff then introduced as a witness, Charles H. Smith, one of the defendants, who testified that, at the time the power of attorney was

given to confess the aforesaid judgment in favor of Wyan's executors, he and the plaintiff were the securities of Todd; that Todd was wholly insolvent, and has ever since remained so. At the time the power of attorney was given, it was agreed between the parties, the said Smith and Rice and the said executors, that, if they, Rice and Smith, would execute the power to confess, the plaintiffs in said judgment would collect it rateably from the said Smith and Rice; that is, cne half from Smith, and the other half from Rice, and those were the terms upon which the power was given. All parties considered Todd as wholly insolvent.

Isaac Lionberger, a witness for plaintiff, stated, that he was sheriff of Cooper county in the year 1845, and up to August, 1846, when James Hill was elected; that J. J. Wilson was his deputy; that, on the 11th of October, 1845, execution number "one" on said judgment against Rice, Smith and Todd came to his hands, as sheriff of Cooper county, and soon after it came to his hands, the plaintiff, Rice, came to him and told him that he was ready to pay his half of the execution, and that he must make the other half out of Smith's property; and afterwards, when Morton, the defendant, became the owner of the judgment, Rice again called on him, and told him he was ready to pay his half of the execution, and to make the other half out of Smith's property; that he saw the defendant, Morton, and told him of Rice's request, and Morton told him to hold up the execution, and not to levy it; this order of Morton's was verbal, and was given sometime before the return of the execution; and before the execution was returned, he got Morton to endorse his order in writing, on the back of said execution, and the said order, so made, is now on said execution, and the return thereon made by his deputy, was made in accordance with the directions of Morton. Witness also stated, that the execution number "two" came to his hands in April, 1846, and soon thereafter, Rice again called upon him, and told him he was ready to pay his half of the execution, and to make the other half out of Smith's real estate; but Morton requested

the execution to be held up, and it was accordingly held up until Hill came into office, and it was then given over to Hill, with that order or request upon it as the return. Witness stated that all Smith's real estate had been sold under junior judgments; also all his personal estate had been sold before any execution came to his hands against Todd, Rice and Smith; that when the execution came to his hands, the real estate so sold under junior judgments, was amply sufficient to have paid off the execution, and the money would have been made upon the same, if it had not been for the defendant, Morton's, orders; that he could and would have made half of the execution out of Smith's real estate; that, independent of the real estate that had been sold under junior judgments, Smith had no property and was insolvent, and the money could not have been made in any other way out of him than by the sale of the said real estate.

James Hill, a witness for plaintiff, stated that he was elected sheriff of Cooper county, Missouri, in August, 1846; that soon after his election, the former sheriff delivered over to him the aforesaid execution number " two," and Rice called on him and told him he was ready to pay his half of the execution, and to make the other out of Smith's real estate; witness communicated this to Morton; that Morton asked witness how and in what order he intended to sell Smith's property, and he told Morton he had advised with several lawyers, viz: Leonard, Adams and Hayden, and they had told him to sell that part of Smith's property first, which had been last sold under the junior judgments, and Morton replied, if he did, that he would commence with the lot he, Morton, had bought under Brown's execution, and he would not suffer his own property to be sold, and directed him to return the execution not satisfied, without any proceedings thereon; he accordingly did so; that execution number " three" was placed in his hands, and, in the meantime, Rice had put into Morton's hands his half of the judgment, and took Morton's note for the same; that Rice directed him to make half of the execution out of Smith's

property, but Morton directed him not to proceed, and to return the execution not satisfied, and he did so, in accordance with Morton's directions.

It was also in evidence, that Morton and January had bought of Smith the house and lot mentioned in Morton's answer, and had been in the occupancy and enjoyment thereof ever since their purchase.

William H. Trigg, a witness, was introduced by defendants, and objected to by the plaintiff; the court overruled the objection; the plaintiff excepted. The witness, Trigg, then testified, that he had no recollection of the agreement spoken of by the witness, Smith: there may have been such an agreement; thinks he agreed to indulge: the reason he supposes that the agreement spoken of might have been made is, that they said they desired each to have the debt to pay. This was all the evidence given in the cause, as appears by the bill of exceptions.

1. From the foregoing statement, it is obvious that several important questions present themselves for our consideration.

In the first place, the omission of the court to find the facts upon which its judgment is given, is fatal to such judgment. In the second place, the admission of one co-defendant as a witness for another, on the motion of such defendant, and against the objection of the plaintiff, is erroneous. Trigg should not have been permitted to testify for his co-defendant, Morton.

2. But the main questions arise upon the conduct of Morton, as charged in the petition, and sustained in proof, as appears by the bill of exceptions, in regard to the several executions issued on the judgment against Rice, Smith and Todd, in favor of Wyan's executors.

These questions relate to the validity of the agreement or understanding alleged to have been made between the parties, that is, the executors of Wyan and Rice and Smith, as the inducement for the power of attorney to confess the judgment.

They also involve the rights and duties existing between principal and surety, as well as between co-sureties.

This court might have contented itself, by reversing the judgment of the Circuit Court on the errors mentioned above; but then, the main questions would have still been undecided between these parties; and as the counsel for the parties argued the questions at great length, and with great ability, and desired the opinion of the court thereon, we have deemed it advisable to give our views, in order to a final settlement of the matters in issue.

In the case of *Briggs* v. *Law et al.*, 4 John. Ch. Rep. 22, an agreement, on the part of a creditor, to collect money *rateably* of the several parties to a note, on their giving a judgment bond for the amount, was enforced by injunction. The chancellor said that " the agreement was binding in equity and conscience."

In this case before the court, a power of attorney was given to confess judgment, by Rice, Smith and Todd, in favor of Wyan's executors, upon the agreement and understanding that the judgment should be collected rateably of Rice and Smith— Todd being, at the time, wholly insolvent. The judgment was so confessed, and such an agreement, being, in Chancellor Kent's language, " binding in equity and conscience," this court will not declare it otherwise.

In the case of the *Commonwealth against Miller's Administrators*, 8 Serg. & Raw. 458, Gibson, Justice, who was afterwards Chief Justice, says : " But there is no clearer rule in equity than that, where the creditor has the means of satisfaction in his hands, and chooses not to retain it, but suffers it to pass into the hands of the principal, the surety can never be called on. Here there was a levy on personal property belonging to the principal, and that was satisfaction *pro tanto*, as regards the sureties, of the benefit of which, nothing could deprive them, except an assent on their part to the arrangement, by which the property was released. That, however, is

not pretended. But it is said, the distinction between principal and surety ceases after judgment has been obtained on the original security ; and that, as to subsequent transactions, equity views them with equal favor. If that be so, I am ignorant of any authority which bears it out, and on the ground of reason, it certainly cannot be supported. The distinction is carried throughout."

In the case of the *Commonwealth* v. *Haas et al.*, 16 Serg. & Raw. 252, Rogers, Justice, said : "·If the creditor has the means of satisfaction in his hands by legal process, and chooses not to retain it, but suffers it to pass into the hands of the per-.son whose property it was, and he afterwards becomes insolvent, a joint *principal* cannot be called on. It is a discharge of the other principal *pro tanto*, at least, if it does not exceed a moiety of the debt." The facts in this case are the same as those in the case of *Commonwealth* v. *Miller's Administrators*, above cited, from 8 Serg. & Raw.

In *Henderson* v. *McDuffee*, 5 N. H. Rep. 38, the rule of law, said the court, by which a contribution among the sureties is enforced, is founded upon fixed principles of natural justice. The parties, in such a case, stand *in equali jure*, and equality with them is equity, and one of them ought not, in justice, to be compelled to bear the whole burthen in ease of the rest, but it should be thrown on all equally.

In *Dixon et al.* v. *Ewing*, 3 Hammond, 280, it was held by the Supreme Court of Ohio, that a creditor, by releasing the property of the principal, taken in execution, exonerates the surety. The court said : " As Foot was the principal debtor, and the complainants his sureties, the judgment creditor was bound, at least, to let the law take its course, without interfering to exempt the principal debtor, or to relieve his property, in such way as to increase the risk or eventual loss of the security.

The question is not, what degree of diligence is required, or what degree of negligence may be permitted in the judgment

creditor, in relation to the safety of the sureties, but how far he may be allowed to *injure* them *by his acts*.

In the case of *Baird* v. *Rice*, 1 Call's Rep. 18, the head note of the case, which is fully borne out by the several opinions of the judges of the court of appeals of Virginia, is as follows : "A. recovered judgment against B. and C., his surety. A. issued execution thereon, which was levied on the property of B. The plaintiff, A., on receiving part of the money, gave B. further time for the balance, and ordered the officer to restore the goods to B. Held that, by this procedure, the judgment was discharged at law, and C., the surety, not having assented to, or acquiesced in the agreement, was discharged in equity, in which he was protected against a second execution by injunction." Roane, Judge, in delivering his opinion, said : "During all these measures, the plaintiff is not bound to do any thing : he may remain a silent and inactive spectator, and is supposed to be totally unconcerned in the transaction. But if he voluntarily intrudes himself therein, he may release the obligation of the sheriff to proceed; he may lose his lien upon the property, and may discharge third persons, otherwise liable, in the event of the property seized being insufficient." Carrington, Judge, said: "I admit that Baird was not bound to indemnify the sheriff, and if the case rested upon that point, he would have been safe; but his consenting that payment should be delayed, and releasing the property, changed the complexion of the case altogether, and discharged Rice from his covenant." Pendleton, president, said : " The execution levied on considerable property, restored to Black by order of the creditor, on payment of part of the money, and a further day given for the balance, was a total discharge of the judgment as to Rice, at law, if the sheriff had done his duty, in returning the execution with the truth of the case. But he having neglected this, Rice is driven into a court of equity for relief, where things are considered done which ought to have been done." Pendleton, president, proceeded :

"I come now to the conduct of Mr. Baird. The cases from Douglass, *Dingwall* v. *Dunster*, Doug. 235, and from Ves. sr., *Bishop* v. *Church*, 2 Ves. sr., 103, 372—were cited to prove that a creditor, to preserve his remedy against his security, is not obliged to give him notice that the principal has not paid, nor to use legal diligence against him, short of the time prescribed by the act of limitations, nor to sue, though desired by the security. Upon which, I observe, that the case in Ves. sr., was going a long way for a court of equity, and perhaps our act of assembly, which obliges the principal to sue, when required by the surety, is better. But if full force be allowed the doctrine, it will not profit Baird in the present case. If, indeed, he had forborne to act, refused to give the security to the sheriff, and left him to the duty of his office, no *laches* could have been imputed to him, and Rice's exoneration must have depended on the final event of that execution. But Baird did act, he received a part of the money, gave Black a further day for the balance, and directed the property to be restored. I conclude as I began, that the sheriff ought to have returned that the property seized had been restored by order of the plaintiff, which would have been a discharge of Rice at law, and this court, considering it as done, will give it the legal effect." In *Bullit's Ex'rs* v. *Winstons*, 1 Munford, 269, it was held by the court of appeals of Virginia, that a plaintiff, by directing a sheriff to put off the sale of property taken in execution, to a day after the return day, and to suffer the property to remain in the possession of the principal defendant or his securities, *releases* the *securities* altogether from that or any subsequent execution, such direction being given without their concurrence.

In *Bangs* v. *Strong*, 10 Paige, 16, the Chancellor of New York said: "Any valid or binding agreement between the creditor and the principal debtor, or *other active* interference of the creditor, whereby the surety may be *injured* or *subjected to increased risk*, &c., if done without the assent of the surety, will, in equity, discharge him from his liability. In *Jones*

*&. Lee* v. *Bullock*, &c., 3 Bibb, 467, the court of appeals of Kentucky held, that a stay of execution, by the creditor, when levied on the property of the principal debtor, without the privity or consent of the securities, will operate to release the securities.

In *Sneed's Executor* v. *White*, 3 J. J. Marshall's Rep. 528, Chief Justice Robertson said : " A stay of execution by the creditor, after a levy of it on the property of the principal debtor, will exonerate his security, if. the lien resulting from the levy be extinguished, and the surety did not approve the indulgence. This is in perfect accordance with the general principle which has been defined ; for, by releasing the property levied on from the lien, the creditor increases the risk of the surety. It is the fact, that the creditor interfered and increased the risk of the surety, and not the extent of injury resulting from his act, which will release the surety from his liability in equity. It was held in the case of the *U. S.* v. *Simpson*, 3 Penn. Rep. 437, that the judgment creditors permitting the lien of the judgment to expire by the lapse of time, and the omission to take the necessary steps for its continuance, will not thereby discharge the surety. In 2 American Leading Cases, 126, *et seq.* the subject is elaborately discussed. The creditor may refuse to go further, but he cannot withdraw any of the steps which he has already taken, and the surety will be discharged as soon as mere inaction is exchanged for a voluntary relinquishment of any hold, however obtained, against the estate of the principal. The difference between securities given by the debtor and those compulsorily obtained by the creditor, would appear to be reasonably well established on the one hand, and that between a mere omission to proceed further, and a direct abandonment of previous proceedings on the other ; and, while a party, who has accepted a pledge from his debtor, will be liable to all losses which could have been prevented by the exercise of reasonable diligence, he will only be bound to abstain from taking any steps directly tending to impair the validity of those liens which have resulted from

compulsory measures. In the case of *Mayhew* v. *Cricket*, 2 Swanston, 185, the Lord Chancellor said : " I always understood that, if a creditor takes out execution against the principal debtor, and *waives* it, he discharges the surety, on an obvious principle, which prevails both in courts of law and of equity. The principle is, that he is a trustee of the execution for all parties interested. See Theobald on Principal and Surety, sec. 174, also 274.

The same principles of equity exist between co-sureties, to be relieved to the extent of the share of each in the debt, by acts of the creditor, as exist between them and the principal, to be relieved of the whole debt, by similar acts of the creditor with the principal ; and where a creditor, by his acts, discharges one surety, or actively relinquishes a lien, he can only hold the other surety liable for his *pro rata* share of the debt. 1 Story's Eq. sec. 499, and 499 (*a.*) 2 Brockenbrough, 167. Chief Justice Marshall, speaking on the principle of substitution, says: " It has been supposed that, though this rule must be admitted as applicable to principal and surety, it will not apply between co-sureties." He says, " I can perceive no reason for this distinction. The principle is completely established in the books, and being established, it must apply to all persons who are parties to the security, so far as is equitable." I know that there are authorities both for and against the proposition, that a judgment recovered extinguishes the relation of principal and security, and that the security then becomes himself a principal. I have traced all of the decisions for the proposition, that I could find in the American courts, back to the observations of Mr. Justice Livingston, in his opinion in the Supreme Court of the United States, in the case of *Lennox* v. *Prout*, 3 Wheat. 525. His observations were not necessary in that case on this subject, and may be considered but *dicta*—not called for by the facts of the case. The cases in the brief of the counsel for Morton, on this subject, bear him out ; but there are many others contrary thereto, and, in the language of Chief Justice Gibson, this doctrine of a judgment extinguishing the relation

between principal and security, on the ground of reason, certainly cannot be supported. The distinction is carried throughout. This doctrine too, is inconsistent with our own statute law, which keeps up the distinction, by affording facilities to securities who have paid judgments for their principals, to obtain judgments against such principals, on giving notice and moving in court for that purpose. On this point, the law is against the appellee beyond doubt. This court, in the case of the *Bank of Missouri* v. *Wells & Bates*, 12 Mo. Rep. 361, held, " If an execution be issued on a judgment, and levied while the judgment is a lien upon real estate, the effect of this would be, to continue the lien and its priority until the writ is executed ; although, before it is executed, the time during which the judgment is a lien had elapsed. This doctrine will be adhered to.

In the case of *Ferguson, surviving partner, &c.*, v. *Turner*, this court held that, when an execution had issued, and was in the hands of the sheriff a lien on personal property, a voluntary discharge of that lien would discharge the security." 7 Mo. 498.

Morton must be considered, as the assignee of the judgment of Wyan's executors against plaintiff, Smith and Todd, as standing affected by all the equities which were existing between the original parties, and, beyond controversy, is subject to all the equities arising out of his own acts and conduct, as the power of attorney to confess judgment, and the confession of the judgment was upon the agreement and understanding that the judgment creditors would collect it rateably of the plaintiff and Smith ; and, from the testimony in the bill of exceptions, there being every reason to suppose, that the judgment, according to the understanding of the original parties, would have long since been satisfied by the plaintiff, and out of Smith's real estate rateably, had not Morton interfered, by purchasing the judgment and controlling the executions thereon, thereby completely and actively stopping the process, and preventing sale of a co-surety's property originally bound to pay one half of

Rice *v.* Morton.

the judgment, and completely and utterly rendering it impossible now for plaintiff to have any relief from his co-surety, Smith. Morton must not complain, if the consequences of his own conduct, under the general principles of both law and equity, as deducible from the authorities above cited, be visited on his own head. He did not stand still and let the lien of the judgment, which he had bought, expire; but when he bought the judgment, there was out in the sheriff's hands an execution, which the sheriff says would have been satisfied out of Smith's real estate, one half, and out of the plaintiff the other half. Plaintiff offered to pay his half to the sheriff, and told and directed the sheriff to make the other half out of Smith's real estate. The sheriff informs Morton of this, and Morton directs him to stop, and return the execution not satisfied. Can any one doubt but that this very act of Morton was, in the language of the Chancellor of New York, " An active interference of the creditor, whereby the co-surety, Rice, was greatly to be injured, and subjected to increased risk. Morton bought the judgment when the execution was already in the sheriff's hands : he had then no right to stop it, so as to injure Rice or increase his risk, yet he stopped not only this, but two other executions. From the whole case, it is manifest that Morton's volunteer purchase, and his subsequent control and direction of the executions, have completely thrown the burthen on Rice, to the exclusion of Smith's real estate.

The plaintiff, from the evidence preserved, is entitled to the relief sought by him in his petition; but as the court failed to find the facts required by law, and for the errors heretofore mentioned, the judgment must be reversed. We send it back, to be further proceeded with, in accordance with the views and principles set forth in this opinion. The other judges concur..