Nov. Term,
1861.

LAVAL
v.
ROWLEY.

**LAVAL and Another v. ROWLEY.**

If a judgment be satisfied, the power to sell under it ceases; and should a sale take place in virtue of an execution upon such satisfied judgment, even a *bona fide* purchaser without notice would acquire no title.

Where a judgment is joint against two defendants, both are regarded as principals, unless by proof, *aliunde*, one of them is shown to be surety for the other; and when one of such defendants, claiming to be surety for the other, pays off the judgment, without any judicial determination of the question of his suretyship, he can not have execution for his use on the judgment.

Tuesday,
November 26.

APPEAL from the *Vanderburg* Circuit Court.

DAVISON, J.—*Rowley* brought this action against *Laval* and *Mann*, alleging, in his complaint, these facts: On *September* 6, 1855, *John F. Stacer* recovered a judgment, in the *Vanderburg* Common Pleas, against one *Peter Kuhlman*, and the plaintiff, *Nathan Rowley*, for $181, in an action founded upon a note given by *Kuhlman*, as principal, and *Rowley*, as surety, and dated *July* 27, 1854. On *August* 8, 1857, *Rowley* paid the judgment, interest thereon, and costs. While *Rowley* was such surety, on said note, viz., on *March* 2, 1855, *Kuhlman* and his wife, with intent to hinder, delay and defraud his creditors, conveyed, by deed in fee simple, a part of lot 109, in the original plat of *Evansville*, (describing it,) to *Sarah Mann*, who received and accepted the conveyance for the same fraudulent purpose. And she, *Sarah*, on *August* 24, in the last named year, conveyed the same real estate to *John Laval*, who, at the time he accepted the conveyance, had full notice of the fraudulent purpose with which the premises had been conveyed to *Sarah Mann*. On *July* 9, 1857, an execution, for the use of *Nathan Rowley*, was issued on said judgment, by virtue of which the sheriff levied upon the above described real estate, and duly exposed the same to sale as the property of *Peter Kuhlman*. At this sale, *Nathan Rowley* became the purchaser, and, in pursuance of his purchase, received a sheriff's deed for the premises, dated *August* 8, 1857. The relief prayed is, that

the several conveyances to *Sarah Mann*, and *John Laval*, be decreed null and void, and that the title of *Nathan Rowley*, to the premises, be quieted, and for general relief, &c.

The defendant, *Laval*, answered: 1. By a general traverse. 2. That he purchased the premises described, &c., in good faith, and for a valuable consideration; that at the time of the purchase, he paid *Sarah Mann* $945, as part of the purchase money, and for the residue gave two notes, each for $472, the first payable at one year from the date of the sale, and the second at two years; that when said money was paid, and notes given, she executed to him a deed, in fee simple, for the property, which was on that day duly recorded, &c. And the defendant avers that, at the time of the execution of the deed, he had no notice or knowledge of any of the matters, with the notice of which he is charged in the complaint; that in pursuance of the purchase, the defendant immediately thereafter took possession of the premises, and made lasting and valuable improvements thereon, worth $4,000; that while these improvements were being made, *Rowley stood by*, and saw them in progress, without intimating to defendant that he had a claim against *Kuhlman*, or against the property. That *Rowley*, after the making of the improvements, caused the premises to be sold by the sheriff, as the property of *Kuhlman*, for $200, upon an execution issued on said judgment, which sum, at the time of the sale was less than the thirtieth part of the cash value of the premises; and that the rents and profits thereof, for one year, were worth more than the amount of the judgment, interest thereon, and costs. Wherefore, defendant says that he is a *bona fide* purchaser without notice, and, as such, ought to be protected, &c.

A demurrer to this defense was sustained, and the defendant excepted. *Sarah Mann*, the other defendant, answered by a general denial. The issues were submitted to a jury, who, in answer to certain questions propounded to them, at the instance of the defendant, found specially as follows: 1. *Rowley* paid the judgment before the execution issued. 2. Prior to the time the execution was issued, no judicial proceedings

were had to determine whether *Rowley* was, or was not, surety for *Kuhlman*. 3. No order of the Court was made awarding execution for *Rowley's* benefit, or declaring him to be defendant's surety in the judgment. 4. The deed from *Peter Kuhlman* to *Sarah Mann*, was made by him, and accepted by her, with intent to hinder and delay the creditors of *Kuhlman*. 5. *Laval*, before he purchased, had notice of the fraudulent character of the deed from *Kuhlman* to *Mann*. The jury also found a general verdict for the plaintiff. At the proper time, the defendants moved that judgment be given in their favor, upon the special finding of the jury; but the Court denied their motion, and they excepted. They then moved for a new trial, and in arrest, which motions were overruled. And thereupon, they moved for a new trial, under § 601 of the Practice Act; but this motion was also overruled, and they excepted. Final judgment was given for the plaintiff.

For a reversal, the defendants rely upon three grounds: 1. The execution, upon which the plaintiff bases his title, was void. 2. The action of the Court in sustaining the demurrer to the second defense. 3. The refusal to grant a new trial, under § 601 of the Practice Act.

As has been seen, the judgment under which the plaintiff claims title, was a joint recovery against himself and *Kuhlman*. There is nothing in the record of the proceedings in which it was rendered, tending to show that he was surety for *Kuhlman;* but the evidence in this case proves the fact, that he really was a mere surety in the judgment, and that, having paid it, he caused the execution thereon to be issued for his own use.

The general rule is, if a judgment be satisfied, the power to sell under it ceases; and should a sale take place in virtue of an execution upon such satisfied judgment, even a *bona fide* purchaser, without notice, would acquire no title 2 Hill, 566; 5 Barbour's S. C. Rep. 565; 18 Johns. 441. In this case, however, the plaintiff when he purchased, having himself paid the judgment, had, of course, notice that it was satisfied, and is not entitled to the relief sought, unless such payment gave him the right, as surety, to order the execution.

Evidently, the rules of the common law allowed no such right. Does it exist by statute?

Both parties rely upon an act which relates to "Remedies of sureties against their principals," and which contains these provisions:

"SEC. 674. When any action is brought against two or more defendants upon a contract, any one or more of the defendants being surety for the others, the surety may, upon a written complaint to the Court, cause the question of suretyship to be tried and determined, upon the issue made by the parties, at the trial of the cause, or at any time before or after the trial, or at a subsequent term; but such proceedings shall not affect the proceedings of the plaintiff.

"SEC. 675. If the finding upon such issue be in favor of the surety, the Court shall make an order directing the sheriff to levy the execution first upon, and exhaust, the property of the principal, before a levy shall be made upon the property of the surety, &c.

"SEC. 676. When any defendant, surety in a judgment, or special bail, or replevin bail .... has been or shall be compelled to pay any judgment, or any part thereof, or shall make any payment which is applied on such judgment, by reason of such suretyship .... the judgment shall not be discharged by such payment, but shall remain in force for the use of the bail, surety, or other person making such payment, and after the plaintiff is paid, so much of the judgment as remains unsatisfied may be prosecuted to execution for his use.

"SEC. 677. Any one of several judgment defendants, and any one of several replevin bail, having paid and satisfied the plaintiff, shall have the remedy provided in the last section against the co-defendants, or co-sureties, to collect of them the rateable proportion each is equitably bound to pay." 2 R. S. pp., 186, 187.

These sections, it must be conceded, very distinctly point out the remedy of a defendant, surety in a judgment. Having paid it, the judgment remains in force for his use, and for his benefit it may be "prosecuted to execution." But it is argued that the remedy thus prescribed can not be made

*Nov. Term, 1861.*

LAVAL
v.
ROWLEY.

available, until the question of suretyship has been "tried and determined," in a judicial proceeding. This may not be required in the case of replevin or special bail, because the contract of such bail, on its face, always shows that the party is bound, alone, in the character of a surety. But where the judgment is joint, against two defendants, both are regarded as principals, unless, by proof *aliunde*, one of them is shown to be a surety. And this leads to the inquiry whether, under the enactments to which we have referred, a party defendant to such joint judgment can assert the rights of a surety, until he is declared such, by the order of a competent court? Section 676, which declares the judgment in force for the use of the surety who pays it, provides no mode in which the question of suretyship may be determined. But § 674 says, that any defendant, being a surety, may, upon written complaint, " cause that question" to be tried, "upon the issue made by the parties at the trial of the cause, or at any time before or after the trial, or at a subsequent term." It is, however, insisted that that section, as also the one that immediately succeeds it, applies solely to the execution issued for the use of the judgment plaintiff; "the object being to compel him to resort, first, to the property of the principal, and save the surety from the inconvenience of first paying the plaintiff, and then collecting the money from the principal." This is, doubtless, one prominent object of these sections, but we perceive no reason why they may not, also, intend to enable the surety to place himself in a position to enforce his rights, under other sections of the statute. Indeed, it is not easy to see how a judgment defendant can be recognized as a defendant surety, entitled to an execution, under § 676, until he has been adjudged to be such, in the manner prescribed in § 674. Unless the record shows him to be a defendant surety, the clerk is not, upon his demand, authorized to issue an execution; because, in the absence of record evidence of that fact, he must be deemed a principal in the judgment. And the result is, the plaintiff in this case having satisfied the judgment, without any judicial determination of his suretyship, the execution under which the premises were sold must be held a nullity.

As this conclusion defeats the plaintiff's action in the Court below, other points made in argument will not be noticed.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*Conrad Baker* and *J. W. Foster*, for the appellants.

*J. G. Jones, James E. Blythe*, and *M. S. Johnson*, for the appellee.