JOHN C. DREXEL ET AL. V. FRANK S. PUSEY, TRUSTEE, ET AL.

FILED DECEMBER 8, 1898. No. 8514.

1. **Bills and Notes**: INDORSEMENT IN BLANK: PAROL EVIDENCE. When one not a payee signs his name in blank upon the back of a promissory note before the delivery thereof, the law presumes he signs as maker; but as between the original parties and those not innocent purchasers of the paper for value and without notice the true character of the obligation assumed, as that he signed as accommodation indorser or grantor, may be shown *aliunde* and by parol.

2. ———: INDORSEMENTS: LIABILITY OF INDORSER. Where, at the inception of a note, a person other than the payee writes his name on the back of the instrument preceded by the words "Notice and protest waived," such indorsement is notice to the original payee and subsequent owners of the paper that the liability assumed is not that of a joint maker.

3. **Principal and Surety**: JUDGMENT: RELEASE OF LIEN. The release of property of the principal debtor from the lien of a judgment rendered on a note, without the consent or knowledge of an accommodation indorser, discharges the latter *pro tanto*.

4. ———: ———. The rendition of a judgment against principal and surety on a note, without having judicially determined on the record which defendant was the principal debtor and which the surety, in accordance with section 511 of the Code of Civil Procedure, does not extinguish the relation of suretyship between the parties, and the duties of the creditor with reference thereto.

5. ———: ———. *Potvin v. Meyers*, 27 Neb. 749, distinguished.

ERROR from the district court of Douglas county. Tried below before AMBROSE, J. *Affirmed.*

The opinion contains a statement of the case.

*G. W. Shields, F. C. O'Hollaren,* and *Read & Beckett,* for plaintiffs in error:

As to Pritchett or his assigns, Coffman bore no different relation to the note than Morrison, Meadimber, or Boyd. Where one, not the payee, writes his name on the back of a promissory note before delivery, he is a maker and held as though he had signed on its face. (*Draper v. Weld*, 13 Gray [Mass.] 580; *Eisley v. Horr*, 42 Neb. 3; *Rice v. Cook*, 71 Me. 559; *Boothby v. Woodman*, 66 Me. 389; *Baker v. Briggs*, 8 Pick. [Mass.] 122; *Chaffee v. Jones*, 19 Pick. [Mass.] 260; *Martin v. Boyd*, 11 N. H. 385; *Currier v. Fellows*, 27 N. H. 366; *Carpenter v. McLaughlin*, 12 R. I. 270; *Chaffe v. Memphis, C. & N. R. Co.*, 64 Mo. 193; *Colburn v. Averill*, 30 Me. 310; *Norton v. Coons*, 6 N. Y. 33; *Knapp v. Parker*, 6 Vt. 642; *Flint v. Day*, 9 Vt. 345; *Schultz v. Howard*, 65 N. W. Rep. [Minn.] 363; *Gumz v. Giegling*, 66 N. W. Rep. [Mich.] 48; *Peninsular Savings Bank v. Hosie*, 70 N. W. Rep. [Mich.] 890; *Jackson Bank v. Irons*, 18 R. I. 718; *Flint v. Day*, 9 Vt. 345; *Sanford v. Norton*, 14 Vt. 228; *Strong v. Riker*, 16 Vt. 554; *Moor v. Folsom*, 14 Minn. 260; *Schmidt v. Schmaelter*, 45 Mo. 502; *Lincoln v. Hinzey*, 51 Ill. 435.)

Coffman was not discharged from liability by the release of Morrison's property from the lien of the judgment. (*Neel v. Harding*, 2 Met. [Ky.] 247; *Wilson v. Foot*, 11 Met. [Mass.] 287; *Murray v. Graham*, 29 Ia. 520; *Shriver v. Lovejoy*, 32 Cal. 574; *Orvis v. Newell*, 17 Conn. 97; *Goodman v. Litaker*, 84 N. Car. 8; *Torrence v. Alexander*, 85 N. Car. 143; *Paul v. Berry*, 78 Ill. 158; *Vary v. Norton*, 6 Fed. Rep. 808; *McCarter v. Turner*, 49 Ga. 309; *Roberts v. Bane*, 32 Tex. 385; *Draper v. Weld*, 13 Gray [Mass.] 580; *Gipson v. Ogden*, 100 Ind. 20; *Yates v. Donaldson*, 5 Md. 389.)

Coffman, by the rendition of a joint judgment against him on the note, is estopped from setting up that he was an accommodation indorser, and not a joint maker of the note. (*Sturtevant v. Randall*, 53 Me. 149; *Lenox v. Prout*, 3 Wheat. [U. S.] *520; *McNutt v. Wilcox*, 1 Free. Ch. [Miss.] 116; *Paul v. Berry*, 78 Ill. 158; *La Farge v. Herter*, 3 Den. [N. Y.] 157; *Findlay v. Bank of United*

*States,* 2 McLean [U. S.] 44; *Pole v. Ford,* 2 Chit. [Eng.] 125; *Bay v. Tallmadge,* 5 Johns. Ch. [N. Y.] 305; *Dougherty v. Richardson,* 20 Ind. 412; *Laval v. Rowley,* 17 Ind. 36; *Potvin v. Meyers,* 27 Neb. 749.)

*Edward W. Simeral, contra.*

References: *Salisbury v. First Nat. Bank of Cambridge,* 37 Neb. 872; *Minick v. Brock,* 41 Neb. 512; *Chambers v. Cochran,* 18 Ia. 159; *Young v. Morgan,* 89 Ill. 199; *Matzen v. Shaeffer,* 65 Cal. 81; *Ætna Life Ins. Co. v. Middleport,* 124 U. S. 548.

NORVAL, J.

This suit was instituted by Frank S. Pusey, trustee, and Victor H. Coffman to enjoin the collection of a judgment at law, and from a decree rendered in their favor the defendants have prosecuted error.

Edward C. Pritchett loaned Charles T. Taylor the sum of $3,000, and the latter gave a promissory note for that amount executed by himself, and four other persons also signed the same as sureties. On June 1, 1891, this note was surrendered to Taylor on the giving of a renewal note, a copy of which follows:

"$3,000          OMAHA, NEB., June 1, 1891.

"Six months after date we, or either of us, promise to pay to Edward C. Pritchett, or order, three thousand dollars at the Merchants National Bank of Omaha, Nebraska, with interest at the rate of ten per cent per annum from date until paid.

"C. T. TAYLOR.<br>
"MORRIS MORRISON.<br>
"THOMAS F. BOYD.<br>
"E. D. MEADIMBER."

Prior to the delivery of this note to the payee the plaintiff Victor H. Coffman, at the request of Taylor, indorsed the same as follows: "Notice and protest waived. V. H. Coffman." Neither Morrison, Boyd, Mead-

imber, nor Coffman received any portion of the consideration for either of said notes. The latter was an accommodation indorser merely, and Morrison, Boyd, and Meadimber signed the note upon its face as makers, so far as Coffman at the time had any knowledge, although in fact they executed the instrument as sureties of Taylor. On April 4, 1892, Pritchett obtained in the district court of Douglas county a joint judgment on said renewal note for the sum of $3,200 against Coffman and the four persons who signed on the face of the instrument, which judgment was assigned to one Hugh McCaffrey, who, without the knowledge or consent of Coffman, in consideration of Morrison's paying one-half of the amount of said judgment, released in writing, from the lien of such judgment, real estate of the latter of the value of $60,000. Subsequently McCaffrey, for value, assigned the judgment to the defendant James C. Jamison, who caused an execution to be issued thereon, which was delivered to the defendant Drexel, as sheriff. The writ was levied upon certain real estate upon which the judgment was a lien, but which real estate, prior to such levy, Coffman had transferred by warranty deed to the plaintiff Pusey, subject to a mortgage of $7,500 in favor of Kimball-Champ Investment Company, which was on record prior to the rendition of said judgment. Upon these facts the trial court finds that Coffman was an accommodation indorser, and was not liable to contribute as between those co-sureties who signed the note on its face as makers, and that the release from the lien of the judgment of the real estate of Morrison by McCaffrey released Coffman from all liabilities upon said judgment.

It is argued in the brief of defendants below that, as to Pritchett or his assigns, Coffman bore no different relation to the note from Morrison, Meadimber, or Boyd. The three persons last above named unquestionably were joint makers with Taylor and were his sureties. The rule in this state is when one not a payee signs his name in blank upon the back of a promissory note be-

fore the delivery thereof to the payee, the presumption is he signed as maker; but as between the original parties and those not innocent purchasers of the paper for value and without notice, parol evidence is admissible to show the true character of the obligation assumed, as that he signed as accomodation indorser or grantor. (*Salisbury v. First Nat. Bank of Cambridge*, 37 Neb. 872.) Pritchett knew that Taylor was the principal debtor and that Coffman was merely an accommodation indorser or grantor. Neither McCaffrey nor Jamison purchased the note, but they bought the judgment entered thereon. It appeared upon the face of the record in the case in which the judgment was obtained that Coffman signed the note: "Notice and protest waived. V. H. Coffman." This was sufficient to charge them with notice that Coffman's relation to the paper was other than that of joint maker, and evidence *aliunde* was admissible to show the real intention. There is not the least room to doubt that Coffman was an accommodation indorser, and not a co-surety with Morrison, Boyd, and Meadimber, but a surety for all of them and Taylor. If Coffman were a joint maker and co-surety with the signers on the face of the note other than Taylor, the cases cited in the brief of defendants would be in point here, but as Coffman is entitled to the rights of an accommodation indorser, those decisions are not entitled to consideration as precedents against the proposition that he was discharged from liability by the release of Morrison's property, since the latter, as to Coffman, was the principal debtor, and the general rule is that the release of property of the principal without the knowledge and consent of the surety will discharge the latter *pro tanto*. (*Dixon v. Ewing*, 3 O. 281; *Blazer v. Bundy*, 15 O. St. 57; *Trotter v. Strong*, 63 Ill. 272.)

It is argued that Coffman, by the rendition of a joint judgment against him on the note, is estopped from setting up that he was an accommodation indorser, and not a joint maker of the note. Authorities are cited in the

brief which fully sustain the contention of counsel, but an examination of the adjudicated cases discloses that there is some conflict in the decision on the subject. We adopt that which is deemed the better rule, namely, that the judgment entered on the note did not preclude Coffman from proving that he signed as accommodation indorser merely, and from insisting that he was discharged by the release by the judgment creditor of the property of Morrison. Judge Dillon, in *Chambers v. Cochran*, 18 Ia. 160, said: "It is true that in the case at bar the note upon which the plaintiff's judgment was founded did not disclose on its face that Brock was surety, but, conformably to the decisions of other courts (*Carpenter v. King*, 9 Met. [Mass.] 511, and authorities there referred to), this court held that the fact of suretyship may be shown *aliunde* and by parol. (*Kelly v. Gillespie*, 12 Ia. 55; *Corielle v. Allen*, 13 Ia. 289.) And as a judgment does not abrogate the independent and collateral fact of suretyship, this relation continues even after judgment, and the creditor cannot violate the duties which a knowledge of this relation imposes upon him without being answerable for the consequences of such violation." The same principle is laid down in the authorities which follow: 1 Brandt, Suretyship sec. 40; *Bangs v. Strong*, 4 N. Y. 315; *Trotter v. Strong*, 63 Ill. 272; *Moss v. Pettingill*, 3 Minn. 145; *Manufacturers & Mechanics Bank v. Bank of Pennsylvania*, 7 W. & S. [Pa.] 335; *Hubbel v. Carpenter*, 5 Barb. [N. Y.] 520; *Commercial Bank of Lake Erie v. Western Reserve Bank*, 11 O. 444; *Commonwealth v. Miller*, 8 S. & R. [Pa.] 452; *Duffield v. Cooper*, 87 Pa. St. 443; *Carpenter v. King*, 9 Met. [Mass.] 511; *Curan v. Colbert*, 3 Ga. 239; *Newell v. Hamer*, 4 How. [Miss.] 684; *Carpenter v. Devon*, 6 Ala. 718; *Rice v. Morton*, 19 Mo. 263; *Smith v. Rice*, 27 Mo. 505; *West v. Brison*, 99 Mo. 684. Shaw, C. J., in discussing the same question, in *Carpenter v. King*, 9 Met. [Mass.] 511, observed: "There is the same reason for admitting evidence *aliunde* to show the relations of parties who are joint

debtors in a judgment, as in a contract. *Prima facie,* they are equally as well as jointly liable. Take the common case of a bond, where on the face of it one is principal and the other surety, yet the judgment is joint. By the record, apparently, both are principal debtors. If the grounds of the judgment could not be inquired into, so as to rebut the presumption of an equal liability, the surety, in case of paying the judgment, would have no remedy over against his principal for money paid; and in case the principal should pay it, he would have an action against his own surety for contribution. If it can be inquired into, to adjust the relations of the debtors to each other, it can be to determine the relation of the creditor to each debtor, where the fact becomes material to the respective rights. Suppose the creditor himself holds collateral security of the principal; it has been often decided that the surety is entitled to the benefit of it, and if the creditor voluntarily surrenders it, he discharges the surety wholly or *pro tanto.* (*Hayes v. Ward,* 4 Johns. Ch. [N. Y.] 123.) Would not this principle apply as well after a joint judgment against the debtors as before? And yet it would involve the necessity of an inquiry into the judgment, to show that it was rendered on a contract in which one was principal and the other surety. The judgment is technically a security of a higher nature, but it is a security for the same debt or duty as the contract on which it is founded. (*Davis v. Maynard,* 9 Mass. 242.) So if a judgment be rendered on several demands, for some of which a third person is liable, but not for all, the fact may be shown by evidence *aliunde.* (*Stedman v. Eveleth,* 6 Met. [Mass.] 114.)"

It is urged that the rule announced in the foregoing authorities should not obtain in this state, in view of section 511 of our Code of Civil Procedure, which provides: "In all cases where judgment is rendered in any court of record within this state, upon any other instrument of writing, in which two or more persons are jointly and severally bound, and it shall be made to

appear to the court, by parol or other testimony, that one or more of said persons so bound signed the same as surety or bail for his or their co-defendant, it shall be the duty of the clerk of said court, in recording the judgment thereon, to certify which of the defendants is principal debtor and which are sureties or bail." The section further declares that the property of the principal debtor shall be exhausted before the property of the surety or bail shall be seized under execution. We discover nothing in this legislation which militates against the doctrine herein laid down. The provisions of said section were enacted for the benefit of the surety, and he may avail himself thereof if he so desires, and in case he obtains his relation to the principal debtor to be established by the judgment rendered on the debt, the law then points out the mòde for the enforcement of the judgment. The purpose of the statute was to enlarge the legal rights of the surety by requiring the property of the principal to be first exhausted before levy on the property of the surety where the latter has caused his relation to be certified when the judgment is rendered, and not to take away or destroy the rights of the surety to be protected in his suretyship. But the surety is not required to have the entry made by the clerk as contemplated by statute, and the omission to do so will not bar him from thereafter asserting that he was liable as surety merely, and was discharged by the releasing by the creditor without his consent of the property of the principal debtor. In the action on the note Coffman did not ask that his relation to the other parties to the instrument be determined, nor was the matter passed upon by the court, and the judgment on the note is not *res judicata* of the question.

We have examined the two Indiana cases cited by defendants below, and find them readily distinguishable from the one with which we are dealing. In one of them (*Laval v. Rowley*, 17 Ind. 36) it appears that a joint judgment was recovered against the principal and surety on

a promissory note. There was no determination of the question of suretyship. The surety paid the judgment, and subsequently caused an execution to issue thereon and the property of the principal debtor to be sold thereunder. In the state of Indiana there are statutory provisions quite similar to our section 511, to which reference already has been had, and in addition the following: "When any defendant surety in a judgment * * * has been or shall be compelled to pay any judgment or any part thereof, * * * the judgment shall not be discharged by such payment, but shall remain in force for the use of the bail or surety, * * * and after the plaintiff is paid, so much of the judgment as remains unsatisfied may be prosecuted to execution for his use." The court held that the surety having paid off the judgment without any judicial determination of his suretyship, he cannot sue out an execution on the judgment for his own use. Upon that decision we have no criticism to make. If we had a statute like the Indiana provision copied above, and Coffman had paid the judgment and was seeking to enforce contribution from the makers by execution on the judgment, then the decision in *Laval v. Rowley, supra,* would fairly be considered a precedent for us to follow. But as Coffman is not seeking contribution, but is complaining of the release of the property of one of the principal debtors exceeding in value the amount of the judgment, the Indiana case is without analogy.

In *Dougherty v. Richardson,* 20 Ind. 412, a joint judgment was entered against a principal and surety and the latter omitted to have himself declared a surety, and there was nothing on the record to indicate the relation he bore to his co-defendant. The judgment was assigned to a third party and real estate was purchased on the faith of the legal presumption that both judgment debtors were principals. It was held that the surety was estopped to set up against innocent third parties his true relation. The record in the case in which judgment was

rendered against Coffman disclosed that the latter was not in fact the principal debtor; hence he is not precluded in asserting his suretyship against the assignee of the judgment.

In *Day v. Ramey*, 40 O. St. 446, it appeared that Ramey & Co. recovered a joint judgment upon default against the principal and sureties on a promissory note payable to one Ogan, who sold and transferred the note to the judgment plaintiffs. The relation of principal and surety was not judicially determined. Execution was issued and levied on the real estate of the principal debtor, and the levy was subsequently abandoned without the consent of the surety. It was insisted in that case, as here, that the omission of the surety upon the rendition of the judgment against him to have entered upon the record that he was a surety, as authorized by the statute of Ohio identical with section 511 of our Code of Civil Procedure, precluded him from asserting that he was not the principal debtor. Dickman, J., in speaking for the court upon the question, observed: "It is urged that Herman Day did not avail himself of the statutory provision, and at the rendition of judgment on the promissory note secure the proper entry by the clerk, certifying which of the defendants was principal debtor and which surety. The statute was designed to enlarge the legal rights of the surety, and although by such omission Hiram Day lost the right of compelling the creditor to first exhaust the property of the principal debtor before his property could be taken in execution, he did not thereby lose any of his equitable rights as surety. The contract of the surety is with the creditor and not with the debtor, and the creditor who accepts a surety is none the less bound to notice the nature of his engagement, because he is required to first proceed against the goods or lands of the principal. After judgment was rendered against Hiram Day the relation between him and Oliver Day, as principal and surety, still continued, and he was then entitled to the same

privileges, and was discharged by the same acts of the creditor as before judgment.   *   *   *   In our view, therefore, Ramey & Co., by dismissing their second levy upon the property of Oliver Day, the principal debtor, and releasing the property levied on, discharged the surety, Hiram Day, to the extent of the value of the property so released."

The final argument advanced in the brief of counsel for defendants is that the case at bar is controlled by the decision in *Potvin v. Meyers*, 27 Neb. 749. In that cause a joint judgment was rendered upon default against the makers and indorser of a note. Execution was issued on the judgment, and the amount due thereon was paid by the indorser to the sheriff, and he returned the writ with the money to the clerk of the court, who paid the same to the judgment plaintiff. Afterwards he assigned the judgment to the defendant by whom the money was paid, who caused an execution to be issued and levied upon the real estate of one of his co-defendants, and the same sold. The district court, on motion, set aside the sale on the ground that the judgment had been satisfied prior to the issuance of the execution, which decision was approved by this court. That case was correctly determined. The judgment having been fully paid, nothing remained which could be assigned. But that decision is not in point here, inasmuch as the facts in the two cases are so materially unlike. The question now before the court was not decided in *Potvin v. Meyers, supra,* nor was it attempted to be determined. There the question of suretyship was made an issue in the application to set aside the sale, and the court found that the proofs did not show that this relation existed. Of course if the person paying the judgment was not the surety for this co-defendant, the right of contribution did not exist. It follows that the judgment now under review must be

AFFIRMED.