CHARLES NORDEEN, APPELLEE, V. AMANDA NELSON ET AL.,
APPELLANTS: CARL A. NELSON, APPELLEE.

279 N. W. 323

FILED APRIL 29, 1938. No. 30213.

W. A. *Meserve* and *Beghtol, Foe & Rankin,* for appellants.

*Peterson & Peterson, contra.*

Heard before GOSS, C. J., DAY, PAINE, CARTER and MESS-MORE, JJ., and WILLIAM A. DAY, District Judge.

WILLIAM A. DAY, District Judge.
This is an appeal from a judgment of the district court

for Knox county, Nebraska. The nature of the suit is an action on a promissory note brought in the district court for Knox county by the plaintiff against the various defendants. The plaintiff sought by his petition to recover from the defendants a judgment on a certain promissory note signed by the defendants, dated February 1, 1932, for a principal sum of $5,562.52, upon which he claimed that there was due the sum of $6,427.52. The defendants and each of them filed their separate answers, the first paragraph of which was a general denial. The remaining paragraphs allege, in substance, that on the 15th day of March, 1927, one Charles Nelson as principal, and the defendant Swan Hult as surety, executed and delivered to Charles Nordeen, the plaintiff, their promissory note in the sum of $5,000; that thereafter Charles Nelson died, an administrator was duly appointed, and, thereafter, on the 17th day of August, 1928, plaintiff herein, Charles Nordeen, filed his claim against the estate of Charles Nelson in the sum of $4,500, with interest at the rate of 7 per cent. per annum from March 15, 1928; that on the 12th day of November, 1928, the claim was allowed by the county court of Knox county, Nebraska, as a valid claim against the estate of Charles Nelson in the sum of $4,500, with interest at 7 per cent. per annum from March 15, 1928, and, thereafter, on the 23d day of July, 1930, the said Charles Nordeen, the plaintiff, without the consent or knowledge of Swan Hult, the surety on said note, entered into an agreement ratifying and approving the payment by the administrator of the said estate of the other claims filed against said estate and permitting his own claim to be continued for payment and to be allowed and paid out in the proceedings for the probate of the will of said deceased and consenting to the payment of his own note at a later date.

The defendants further allege that, had the said plaintiff not entered into said agreement to extend the time of payment on the note, he would have received from the estate of Charles Nelson the sum of $2,500. The defendants

further allege that thereafter, under date of February 1, 1932, the said plaintiff fraudulently, and with the intent to deceive, cheat and defraud the defendants, did falsely and fraudulently represent to the defendants, first, that the said Swan Hult was legally liable on said day for the payment of the said original $5,000 note and interest, and that the said Swan Hult on said day was indebted to the plaintiff for the said $5,000 with interest thereon, to wit, the sum of $5,562.52, and that he was willing to accept a renewal of the amount due on said $5,000 note by a new note, due in five years, if signed by each of the defendants, and threatened that, if the defendants did not sign said renewal note in said amount, he would immediately bring suit against said Swan Hult, reduce the same to judgment and force the collection thereof by execution. That the plaintiff fraudulently withheld information and concealed from the defendants the fact that he had acquiesced in and consented to the entry of the said decree in the county court, and that he had entered into said agreement to extend the time of payment of said note and postponed his right to enforce the said note; that he failed and neglected to demand his *pro rata* share of the personal property of the said estate of Charles Nelson, deceased, and that he had wholly failed and neglected to collect from the proceeds of the said personal property the sum of $2,500 due and legally payable on said note; that the said plaintiff made said false representations, and each of them, with the intent that the defendants should act upon the same; that the defendants were ignorant of the falsity of each of the said representations and statements, and believed said representations and statements, and each of them, and acting and relying upon said statements, and each of them, to their damage, signed the said note. Said defendants further allege that said representations were false and untrue, and that by reason thereof the said Swan Hult on said day was not indebted to the plaintiff, and the codefendants further allege that, the defendant Swan Hult not being indebted to the plaintiff in any amount, they are

not now indebted in any amount to said plaintiff. Wherefore, the defendants pray that the plaintiff's petition be dismissed, and the defendant Swan Hult alleges that, if he is liable in any amount to the said plaintiff, he is entitled to a credit on said note in the amount of $2,500 with interest at 6 per cent. per annum from the 23d day of July, 1930, and prays that plaintiff's petition be dismissed, or, in the alternative, if he is held liable on said note, that he be given a credit thereon, with interest at 6 per cent. per annum from the 23d day of July, 1930. To which answers the plaintiff demurred, which demurrer was sustained by the court.

The appellants complain that the court erred in overruling their motion for a new trial, the essential error alleged being that the court erred in sustaining the several demurrers to each and all of the paragraphs of their amended answers, except paragraph 1.

Section 62-408, Comp. St. 1929, provides as follows: "In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable."

The plaintiff in this case was the original payee of the note, and the note in question had not been transferred. Therefore, the defendant Swan Hult, although he appeared to be a maker of said original note for which the note in question was given in renewal, was entitled to show that he in fact signed the note as surety only and was secondarily liable thereon, and that said Charles Nelson was in fact the principal and primarily liable, and that said Charles Nordeen took said note with knowledge of such facts. In support of this proposition of law this court has already said, in the case of *Hardin Trust Co. v. Wollard,* 119 Neb. 307, 228 N. W. 866: "A payee, taking a negotiable instrument, which is not negotiated, with knowledge that certain of the apparent makers thereof are in fact sureties who signed under an agreement with such payee that certain moneys were to be applied, when received and as received, to the payment of the instrument, is not as to such sureties

a holder in due course." The court further says, in the same opinion:

"Section 4801, Comp. St. 1922 (section 62-1702, Comp. St. 1929), is called to our attention as precluding the Hevners from proving that each signed as sureties and not as makers. The section, considered as a part of an independent act, as it is, does not warrant such conclusion. It provides: 'The person "primarily" liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are "secondarily" liable.' This does not prevent one appearing as a maker of a promissory note from alleging and proving that he signed as a surety, in a proceeding between the original parties on a note not negotiated. The section is dealing solely with the promissory note or instrument as it appears in its legal relation to the parties as by it disclosed, and does not necessarily prevent one who appears to be a maker or payor from showing by proof in a proper case his actual status. The different provisions of this act must be considered together, and if possible each of its nearly 200 sections be permitted to function in its own sphere in furtherance of the purpose and intent of the act.

"The following cases will be found instructive: *Bank of Commerce & Savings v. Randell*, 107 Neb. 332; *Farmers State Bank v. Lydick*, 112 Neb. 586.

"The instant case, as we have seen, is one between the original parties to the note, each acting with full knowledge of the facts, and in a transaction wherein the payee bank was the inspiring cause of the execution and delivery of the note, hence it is not, and could not be, a holder of the note in due course. While the note is negotiable in form, it has not been 'negotiated' within the meaning of the negotiable instruments statutes. Hence, as we conclude, these parties are governed as to their rights and relationship to each other, by that part of section 4669, Comp. St. 1922, which reads as follows: 'In the hand of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable.'

And they are governed further by the rule laid down by us in *Hatfield v. Jakway*, 102 Neb. 831, wherein we construed the above quoted statutory provision, and announced: 'A payee who takes a negotiable instrument with knowledge that one of the signers is only signing as a surety, and who agrees that certain collateral pledged to secure the note shall first be applied before the surety shall be liable, is not a "holder in due course" as respects such agreement with the surety.' "

Therefore, it is to be seen that negotiability is not the essential element to the validity of a note, and that it is negotiable in form does not, as between the maker and payee, deprive the maker of any defense thereto he would otherwise have, and, hence, the signer of a note can show by parol in an action thereon by the payee that he was a surety only. From the cases above cited it is to be seen that the law is that, as between the parties in a suit on a promissory note, it being shown that the payee took the note with knowledge thereof, the relation of principal and surety of the makers may be shown and the established rules of law operating to discharge a surety may be pleaded and proved as a defense.

The allegation that defendants were released from liability by extension of time of payment of said note without the consent of Swan Hult is negatived by the terms of his original obligation, set out as exhibit A in each of the amended answers, the terms of which agreement read as follows: "The makers, indorsers, sureties, guarantors and assignors of this note severally waive demand, presentment for payment, protest and notice of protest and of nonpayment, and agree and consent that, after maturity, the time for its payment may be extended from time to time by agreement between the holder and any of them, without notice, and that after such extension or extensions the liability of all parties shall remain as if no extension had been had." The provisions of the original obligation of Swan Hult, whereby he consented to extensions of time of payment, cannot be overcome simply by alleging the conclu-

sion that the extension was made without his consent, and the defendant Swan Hult, having consented that the time of payment might be extended by the terms of his original obligations, cannot now complain of the extension that may have been granted. The allegations of extension of time being entirely insufficient to state a defense, it follows that the rulings of the trial court on the demurrer as to this defense and the exclusion of evidence upon these allegations were correct. The agreement as to the extension of time embodied in the terms of the original instrument is a valid and binding agreement under section 62-105, Comp. St. 1929: "But the negotiable character of an instrument otherwise negotiable is not affected by a provision which: * * * Third. Waives the benefit of any law intended for the advantage or protection of the obligator." This section of the statute has been held valid in *First Nat. Bank v. Baldwin,* 100 Neb. 25, 158 N. W. 371, which holds as follows: "The clause waiving all defenses on the ground of extension of time has been held not to destroy the negotiability of note." The agreement, as heretofore stated, being a valid and binding one, the defendant Swan Hult cannot claim the protection of section 62-802, Comp. St. 1929, which provides as follows: "A person secondarily liable on the instrument is discharged: * * * Sixth. By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the person secondarily liable." The above section, however, is a complete defense where consent to the extension of the time of payment has not been given.

The respective answers of the defendant Swan Hult and his codefendants allege in substance that the plaintiff, Charles Nordeen, filed his claim in the estate of Charles Nelson, deceased, in the county court of Knox county, Nebraska, on the original note in question, which was allowed, in the sum of $4,500, and that thereafter, had he done nothing further, he would have received, by operation of law, in payment upon said claim, a sum of $2,500 or more, and that by an affirmative agreement on his part he volun-

tarily relinquished his right to receive the $2,500 out of the personal property of the estate of the decedent Charles Nelson. We find no quarrel with the plaintiff's proposition that a mere forbearance by a creditor to sue a principal will not release the latter's surety, or the mere failure of a creditor either to enforce the security or to take active steps to protect the same will not release the surety, but the allegations in the answer are to the effect that the plaintiff, by an affirmative, voluntary act on his part, deliberately and intentionally parted with the security which he had obtained. We may also concede that the plaintiff was under no duty to file a claim in the estate of Charles Nelson, deceased, but, having elected to act as a volunteer and having once acquired the security, which was the allowance of the claim, in effect a lien upon the assets of the estate, he cannot thereafter, by an affirmative act, destroy the security thus obtained, and which had inured to the benefit of the surety, Swan Hult. The authorities are in agreement upon the proposition that a surety is discharged to the extent of the value of the security lost where the creditor, *without* the surety's consent, affirmatively releases collateral security. The defendants in this case do not allege in their answers mere passive inaction or negligence, but do allege an affirmative act, whereby the plaintiff entered into an agreement with the administrator of the estate of Charles Nelson, deceased, by the terms of which he agreed to waive his right to receive the *pro rata* share of his claim previously allowed. Plaintiff's contention that it would have been necessary for him to have taken affirmative action to secure his *pro rata* share of the personal estate of the deceased, Charles Nelson, is without legal foundation. We think that the only logical conclusion that can be drawn from the facts alleged are that if the plaintiff had done nothing he would have received, in due course of time, his *pro rata* share of his claim out of the estate of the deceased Nelson. We cannot find any reason to believe that the administrator would have acted contrary to law, or that the county judge of Knox county, Nebraska, would have sanctioned the dis-

tribution of the personal property of the estate of Charles Nelson without the plaintiff, Charles Nordeen, receiving his *pro rata* share. In *Carson's Executors v. Buckstaff*, 57 Neb. 262, 77 N. W. 670, this court has said: "A debtor, when sued by his creditor, may plead as a counterclaim or set-off the actual value of any collateral security which the creditor has converted to his own use or the value of any collateral security which he has released, dissipated, or diverted from the purpose for which he held it." Also, in *Stewart v. American Exchange Nat. Bank*, 54 Neb. 461, 74 N. W. 865: "A creditor who without the consent of the surety voluntarily parts with security thereby releases the surety to the extent he has been thereby damaged." Therefore, we find that, where a creditor with knowledge that one of the makers of a note is surety files and causes to be duly allowed a claim on said note as against the estate of the principal which is insolvent, and, without consent of the surety, said creditor voluntarily releases any portion of the said estate from payment of said debt, he may be charged with damages to the extent of the loss caused by such affirmative act, and such loss may be claimed as a credit and offset in a suit on said note. *Carson's Executors v. Buckstaff*, 57 Neb. 262, 77 N. W. 670; *Brown v. Chicago, R. I. & P. R. Co.*, 76 Neb. 792, 107 N. W. 1024; *Stewart v. American Exchange Nat. Bank*, 54 Neb. 461, 74 N. W. 865; *Drexel v. Pusey*, 57 Neb. 30, 77 N. W. 351; Brannan, Negotiable Instruments Law (4th ed.) 268.

The defendant Swan Hult and his codefendants further allege in their respective answers that they were induced to sign the note by representations made by the plaintiff to the effect that Swan Hult was then and there indebted to the plaintiff in the sum of $5,562.52, and that the said plaintiff knew the same to be false and untrue. We think that this allegation is a defense, and that the trial court erred in sustaining the demurrer thereto. "When a fraudulent transaction is sought to be enforced in the courts, the defendant may set up the fraud either as a complete or partial defense, as the case may be, or else in mitigation of

damages or ground for recoupment." 12 R. C. L. 408, sec. 154. See *Brucker v. Kairn,* 89 Neb. 274, 131 N. W. 382; *McCandless v. Greusel,* 103 Neb. 472, 172 N. W. 249; *Olcott v. Bolton,* 50 Neb. 779, 70 N. W. 366.

The defendant Swan Hult alleges, by his amended answer, that the note sued on was wholly without consideration, this plea being based upon the proposition that Swan Hult was released as surety upon the original $5,000 note by reason of the extension of time of payment of said note. We, however, find that the defendant Swan Hult, by an affirmative agreement embodied in the terms of the original instrument, had agreed to an extension of time. Therefore, he cannot claim a complete absence of consideration, and the partial absence of consideration is only a defense *pro tanto* as to him, by reason of the plaintiff having affirmatively released the estate of the principal maker of the note, Charles Nelson, to the extent of $2,500 or more.

This being an action between the original parties to the note, the law is, in that regard: "Absence or failure of consideration is matter of defense as against any person not a holder in due course and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise." Comp. St. 1929, sec. 62-205. See *Elmcreek Ditch Co. v. St. John,* 127 Neb. 253, 255 N. W. 16; *Spangenberg v. Losey,* 116 Neb. 112, 216 N. W. 191.

We therefore are of the opinion that the district court erred in sustaining the demurrers to the answers of the defendant Swan Hult and his codefendants, with the exception of that portion of the answers alleging a complete release by reason of the extension of time without the consent of the surety, and it is the order of this court that the order sustaining the demurrer of the plaintiff to the answers of the defendant Swan Hult and his codefendants, with the exception above noted, be and is hereby vacated and set aside, and that a new trial is hereby granted the defendants.

REVERSED.