HARDIN TRUST COMPANY, APPELLANT, V. J. C. WOLLARD ET AL., APPELLEES.

FILED JANUARY 24, 1930. No 26969.

*D. A. Thompson, Thomas Robertson,* and *J. S. Gilham,* for appellant.

*C. P. Anderbery* and *Leon Samuelson, contra.*

Heard before Goss, C. J., Rose, Good, Thompson, Eberly and Day, JJ., and Foster, District Judge.

Thompson, J.

The Hardin Trust Company, appellant, a banking institution, hereinafter called the bank, brought this action on a promissory note, negotiable in form, dated September 17, 1921, payable six months after date, such appellant being the payee named therein, against the defendants, appellees, they being apparent makers, to recover the sum of $5,000 with interest thereon from March 27, 1925. Trial was had to a jury, verdict returned in favor of the bank and against defendant Wollard for the full amount claimed, and in favor of each of the defendants Hevner against the bank, on which judgment was rendered. To reverse this judgment appeal is had.

The claimed errors presented, considering the brief of appellant and the "Additional Brief of Appellant," are, in substance, that the judgment is contrary to law; that the court erred in giving instructions 2 and 4, respectively; that the judgment is contrary to the evidence; and that the court erred in overruling the motion for a new trial.

The petition is in usual form, except the statement therein that the interest had been paid up to March 27, 1925, which payment is shown by the indorsement on the note to have been made by a trust deed dated February 7, 1925. The note contained the clause "and authorize extension of time by payment of interest." Each of the defendants filed a separate answer, which, being very similar, have been by us considered together, and in substance such answers alleged that defendant Wollard signed the note, and after it was signed by the Hevners later, it was delivered to the

bank at its request under the conditions hereinafter set forth; denied that there was any consideration running to either of the Hevners therefor, or that they signed the note other than as sureties, Wollard receiving the entire consideration; denied further that payment of interest had been had as alleged by the bank, or otherwise, or that the time of payment had been at any time extended, with Wollard's knowledge or consent, or that of either of the Hevners; further, that the note was barred by the statute of limitations; that such note was signed by the Hevners under a promise to them by the bank, before and at the time of their attaching their respective signatures thereto, and as an inducement therefor, that if they would sign the note with Wollard, as sureties, it, the bank, would, whenever certain lands involved were traded or sold, first apply the proceeds on the note in liquidation thereof, and not to any other or different purpose up to the time such note and interest had been paid; further, that the Hevners, relying upon the aforesaid inducement and in furtherance thereof, signed the note as such respective sureties; that, after the note was delivered to the bank under the above arrangement, moneys belonging to Wollard came into the bank's possession and under its control from the sale, exchange and rental of lands to the amount of more than $15,000; that the bank, contrary to its promise and over the protest of Wollard, and without the knowledge or consent of either of the Hevners, applied the same to the payment of other indebtedness owing to it by Wollard, as well as to indebtedness owing to and held by other banks against Wollard, and secured by the names of relatives of the cashier of the bank, and that by reason thereof the Hevners were damaged to the extent of the face of the note sued on, together with all interest thereon; further, that by reason thereof such Hevners were released as such sureties.

The reply to each of such answers, so far as material under the record before us, was a general denial; further, that the provisions in the note authorized the extension of time of payment with or without the knowledge of the Hevners, or either thereof, by payment of interest by Wollard; that

such payment of interest was made by Wollard, and thus tolled the statute of limitations. These affirmative allegations stood denied under the Nebraska rules of pleading.

On the issues as thus presented, the jury found as hereinbefore indicated.

Section 4801, Comp. St. 1922, is called to our attention as precluding the Hevners from proving that each signed as sureties and not as makers. The section, considered as a part of an independent act, as it is, does not warrant such conclusion. It provides: "The person 'primarily' liable on an instrument is the person who by the terms of the instrument is absolutely required to pay the same. All other parties are 'secondarily' liable." This does not prevent one appearing as a maker of a promissory note from alleging and proving that he signed as a surety, in a proceeding between the original parties on a note not negotiated. The section is dealing solely with the promissory note or instrument as it appears in its legal relation to the parties as by it disclosed, and does not necessarily prevent one who appears to be a maker or payor from showing by proof in a proper case his actual status. The different provisions of this act must be considered together, and if possible each of its nearly 200 sections be permitted to function in its own sphere in furtherance of the purpose and intent of the act.

The following cases will be found instructive: *Bank of Commerce & Savings v. Randell,* 107 Neb. 332; *Farmers State Bank v. Lydick,* 112 Neb. 586.

The instant case, as we have seen, is one between the original parties to the note, each acting with full knowledge of the facts, and in a transaction wherein the payee bank was the inspiring cause of the execution and delivery of the note, hence it is not, and could not be, a holder of the note in due course. While the note is negotiable in form, it has not been "negotiated" within the meaning of the negotiable instruments statutes. Hence, as we conclude, these parties are governed, as to their rights and relationship to each other, by that part of section 4669, Comp. St. 1922, which reads as follows: "In the hands of any holder other than

a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable." And they are governed further by the rule laid down by us in *Hatfield v. Jakway,* 102 Neb. 831, wherein we construed the above quoted statutory provision, and announced: "A payee who takes a negotiable instrument with knowledge that one of the signers is only signing as a surety, and who agrees that certain collateral pledged to secure the note shall first be applied before the surety shall be liable, is not a 'holder in due course' as respects such agreement with the surety."

Without going into detail, it may be said that the evidence reflected by the record fully sustains the finding of the jury. In fact, the proof is so clear and convincing that no other verdict could, within reason, have been returned. This is true as to the inducing promise made to the Hevners, their reliance thereon, the breach thereof by the bank as charged, and resulting damage to them as proved under the alleged facts. Hence, it becomes unnecessary to consider the other claimed errors presented, as under this reflected situation no substantial right of the bank can be said to have been affected by reason of these errors, if found to be such. Comp. St. 1922, sec. 8657; *Maxson v. J. I. Case Threshing Machine Co.,* 81 Neb. 546; *State v. Quimby,* 104 Neb. 590; *In re Estate of Nebel,* 106 Neb. 302; *Bryan v. Manchester,* 111 Neb. 748.

It may be added, further, that each of the aforesaid wrongful applications of moneys by the bank might be regarded as a "payment," as such wrongful use in each instance served to reduce the liability of the sureties *pro tanto.*

The judgment of the trial court is right, and is in all things

AFFIRMED.