Stephenson, J.
 

 Inez L. Goodman was an accommodation maker on the note upon which this action is predicated. From all that appears she did not receive one penny of the money, nor was she in any wise enriched by it. Apparently she was the escrow agent of her husband, as she delivered the deed of gift to Minton Goodman shortly after the death of her husband, Frank C. Goodman. Minton Goodman was charged with a knowledge of all the infirmities in the promissory note in question that could have been interposed as against the original payee, as he was not a holder in due course, having taken the note after it became due. He was charged with knowledge that Inez L. Goodman was an accommodation maker on the promissory note; but how is she aided by that fact?
 

 It was undoubtedly the purpose of the Uniform Negotiable Instruments Act to get away from the defenses to actions on commercial paper as they existed at common law and under the Law Merchant. The law of suretyship had become obnoxious generally, otherwise we would not have had a law so completely
 
 *227
 
 uniform in the United States as the Negotiable Instruments Law, it having been enacted into law in all the states and the following dependencies: Alaska, Hawaii, .Philippine Islands and Puerto Rico, and likewise in the District of Columbia.
 

 If the common law and Law Merchant were to be completely banished by the Uniform Negotiable Instruments Law it was necessary that the law be most-comprehensive — and it is.
 

 Minton- Goodman claims that every phase of this case is fully covered by the Negotiable Instruments Law. He claims that the
 
 reason
 
 an accommodation maker is no longer a surety is because our Negotiable Instruments Law says otherwise.
 

 While it is not admitted in so many words that Inez L. Goodman was an accommodation maker of the note in question, it is admitted that she signed it without qualification, and that she received none of the proceeds of the loan, and these admissions bring her squarely within the purview of that section of the Negotiable Instruments Law defining' accommodation maker, to wit, Section 8134, General Code.
 

 She is primarily liable for the payment of the note. Section 8296, General Code.
 

 She is liable primarily, even if the holder knew her to be an accommodation maker when he took the note. Her liability was to pay the note according to its tenor. Section 8165, General Code.
 

 How can she be discharged from liability on the note?
 

 1. By payment in due course by or on behalf of the principal debtor;
 

 2. By payment in due course by the party accommodated, when the instrument is made or accepted for accommodation;
 

 3. By its intentional cancellation by the holder;
 

 4. By any other act which will discharge a simple contract for the payment of money;
 

 
 *228
 
 5. When the principal debtor becomes the holder of the instrument at or after maturity in his own right. Section 8224, General Code.
 

 If Inez L. Goodman is not discharged in one of the ways provided by the Negotiable Instruments Law, she cannot be discharged at all. This court has so held in
 
 Richards
 
 v.
 
 Market Exchange Bank Co.,
 
 81 Ohio St., 348, 90 N. E., 1000, 26 L. R. A. (N. S.), 99, which case was followed and approved in the case of
 
 McGowan
 
 v.
 
 Cosmopolitan Bank & Trust Co., 121
 
 Ohio St., 503, 169 N. E., 574.
 

 We regard the law and logic of these cases as sound, and find ourselves in perfect harmony with them.
 

 Inez L. Goodman litigated her claim that her “deed of gift” to The Burrows was void, and that she had a vested right of dower therein, and she was defeated.
 

 Later Minton Goodman litigated his claim against Inez L. Goodman and Inez L. Goodman as administratrix of the estate of Prank C. Goodman, deceased, to have her personally, and as administratrix, exonerate The Burrows from the lien of the mortgage to the United Banking
 
 &
 
 Savings Company; and, if he failed in that regard, that he be permitted to pay the same and be subrogated to the rights of the mortgagee against Inez L. Goodman. In this contention he was defeated.
 

 In short, Minton Goodman was denied the right of exoneration. The case was tried on its merits. This fact is revealed from the journal entry, which appears in the agreed statement of fact. The right of subrogation had not ripened, and it fell with the case.
 

 Later he paid the note and had the mortgage released of record. Here the mortgage passes out of the picture. Its virtue as a lien is gone.
 

 The note was indorsed to him and issues were joined as hereinbefore set out.
 

 Minton Goodman’s right to exoneration is out of
 
 *229
 
 this case. The plea of
 
 res judicata
 
 is good to that extent at least. We must assume that the court held he had no right to have The Burrows exonerated out of the estate of Frank C. Goodman, deceased.
 

 The cause of action on the promissory note in question accrued in Ohio, and the statutes of limitations of Ohio and not those of California govern. This question is in this case, hut it is not pressed hy plaintiff in error. There are but two questions insisted upon in plaintiff in error’s brief:
 

 First, in a suit on a promissory note against an accommodation maker, is the defense that the holder has converted the security abrogated by the Negotiable Instruments Law?
 

 Second, if the Negotiable Instruments Law prevents the defense of conversion of the security by the holder, because such method of discharge is not specified in the statute, will not a counterclaim lie?
 

 We will consider these questions in inverse order.
 

 In a case predicated upon facts set- out in the record in this ease, the second proposition should never be reached. Suffice it to say the position taken by plaintiff in error on this proposition of law is not tenable.
 

 As to the first proposition :-
 

 The Negotiable Instruments Law does not in so many words recognize the “conversion of a security” as one of the methods whereby a maker of a promissory note is discharged from liability.
 

 Do the pleadings and the admitted facts afford Inez L. Goodman any protection under the Negotiable Instruments Law?
 

 At the outset it had as well be known that Inez L. Goodman has no standing as a surety in the face of the facts herein.
 

 When Inez L. Goodman signed the promissory note and mortgage and delivered them to a stranger to the blood of Frank 0= Goodman, she had no reason to be
 
 *230
 
 lieve that they would ultimately fall into the hands of his heir and her liability thereunder be increased one jot or tittle by reason of the laws- of descent and distribution. She undertook as a comaker to discharge the
 
 promissory note and mortgage.
 
 She undertook that upon foreclosure of the mortgage given to secure the payment of the promissory note she would personally pay any deficiency that might be created because. of failure of the proceeds of sale of the mortgaged premises to satisfy the debt; and this was the extent of her personal obligation.
 

 Minton Goodman inherited The Burrows, but he did not inherit the promissory note and mortgage in question. He bought them. He bought them after they were due, and his rights under them rose no higher than the rights of the United Banking & Savings Company, the original payee. He paid the entire mortgage debt and had the mortgage released of record. Whose debt was it? It had been the debt of Frank C. Goodman. Frank C. Goodman was dead, and it became the joint and several debt of the estate of Frank C. Goodman, deceased, and Inez L. Goodman, the co-obligor.
 

 The note and mortgage in this case, so far as Inez L. Goodman was concerned, constituted one indivisible contract. She parted with all her interest in the real estate when she signed the mortgage, as a pledge for the payment of the note she signed. The mortgage has been satisfied; the real estate is discharged from the lien; Inez L. Goodman can reap no benefit from it. Minton Goodman has the note and he wants her to pay it under these circumstances.
 

 Suppose the United Banking & Savings Company had received the full amount of its claim from some one, had released the mortgage, and sued Inez L. Goodman on the note. Could it prevail?
 

 Suppose the United Banking & Savings' Company had held the promissory note and mortgage and had
 
 *231
 
 sued Inez L. Goodman on the note, could she not as a maker have required it to exhaust its mortgage security before it could procure a personal judgment against her?
 

 Suppose the note and mortgage had been given by a stranger to the blood of Frank O. Goodman, deceased, and Minton Goodman had purchased them. The result would have been the same.
 

 Minton Goodman insists that by reason of his having acquired the promissory note and mortgage in question he should be subrogated to all the rights of the original payee. We do not deny to him this right. He has them with all their virtues and all their vices, as he was not a holder in due course. He had the fee to the real estate by right of inheritance, and he had the mortgage by purchase. He had both the legal and the equitable title to the same piece of real estate. Here was a merger pure and simple. This was enough to destroy the legal efficacy of the mortgage. But that was not all. He had the mortgage released of record, and blotted it out forever.
 

 Plaintiff in error half-heartedly cites the case of
 
 Senter
 
 v.
 
 Senter, Exr.,
 
 87 Ohio St., 377, 101 N. E., 272, decided by this court three years after the case of
 
 Richards
 
 v.
 
 Market Exchange Bank Co., supra,
 
 had been determined. That case is practically on all fours with the present case. Is it weakened to the extent that it has no applicability to the instant case because the
 
 Richards case
 
 and the Negotiable Instruments Law were not cited? However violent the presumption may be, we are assuming that this court as it was then constituted knew of the existence of the Negotiable Instruments Law, and that there had been such a case as the
 
 Richards case.
 
 In the face of all this knowledge it held: “3. By thus merging the two estates, the mortgagee was disarmed of the right of foreclosure to subject the property to the payment of the debt, and
 
 *232
 
 thereby released a known surety for the debt, who had signed the mortgage notes jointly with the debtor as an accommodation maker.”
 

 In view of the fact that we are construing the Negotiable Instruments Law in this case, we are ignoring the words “a known surety for the debt,” as contained in the above syllabus. We are not satisfied to dispose of this case under the doctrine of merger, when such disposition is warranted not only by the spirit but by the letter of the Negotiable Instruments Law.
 

 Section 8224, General Code, provides how a negotiable instrument shall be discharged. Subdivisions 1 and 2 refer to payment by the principal debtor and by the party accommodated, respectively. Subdivision 3 refers to intentional cancellation by the holder. Subdivision 4 reads as follows: “By any other act which will discharge a simple contract for the payment of money.”
 

 This ground has just as much virility as the other four grounds. Uniform Laws Annotated, vol. 5, 608, 609, 610.
 

 “Simple Contracts are those not 'of specialty or record.” Bouvier Law Dictionary, vol. 1, page 661.
 

 Let us simplify by calling it a verbal contract. A. says to B.: “Lend me $50.00. I will repay you on the first day of January next. Here is a fifty-dollar coupon bond of the Fourth Liberty Loan you can hold to secure your $50.00.” B. lends A. the $50.00 and accepts the bond. On January 1st, A. goes to B. and says: “Here is your $50.00. Give me my bond.” B. says: “I cannot give you the bond. I haven’t it.” A. then says: “If you do not give me my bond I will not pay you.” Time wears on. B. sues A. for $50.00. A. defends, setting up the fact that when the loan was made he delivered a $50 bond to B. to hold as security; that when B. delivers the bond he will pay him his $50.
 
 *233
 
 B. replies that he has sold the bond, but he wants his $50 any way. Who should prevail?
 

 Here was a simple contract for the payment of money. Ample
 
 bona fide
 
 security was given, which was disposed of by the payee. He could not restore it. The payee was at his string’s end, and the “simple contract for the payment of money” was discharged.
 

 Apply these principles to the facts in the case here presented: A promissory note was executed and delivered, and a more than ample mortgage given to secure it. The note and mortgage are purchased by a party who is charged with a knowledge of all the facts. He releases the mortgage of record and'sues one of the makers on the promissory note. The maker says: “Give me the security, or at least give me the benefit of it, and I will pay you.” The holder of the note replies: “I can not. It is gone forever.” The maker replies: ‘ ‘ Then I will not pay. ” Nor should she.
 

 The holding in thib case in no wise runs counter to the third and fourth paragraphs of the syllabus in the case of
 
 Simon
 
 v.
 
 Union Trust Co.,
 
 126 Ohio St., 346, 185 N. E., 425. We recognize the principle that “the fact that there is security therefor takes away no right or remedy of the holder of the note.”
 

 Neither do we deny to the holder of a note secured by mortgage the right to waive the mortgage security and pursue his personal remedy.
 

 In the case here presented there was. no mortgage security to waive. The mortgage had been satisfied and cancelled of record. Applying the old English proverb, Minton Goodman could not “have his cake and eat it.”
 

 The judgments of the Court of Appeals and the court of common pleas are hereby reversed.
 

 This court coming now to pronounce the judgment that the court of common pleas should have pronounced, it is adjudged that Minton Goodman’s peti-
 

 
 *234
 
 tion be dismissed and that Inez L. Goodman go hence and recover her costs herein expended.
 

 Judgment reversed.
 

 Weygandt, O. J., Allen, Jones, Matthias and Bevis, JJ., concur.
 

 Zimmerman, J., not participating.