OVERTON, Justice.
 

 On December 17, 1926, John R. Adams purchased from C. L. Cross a lot in the city of Shreveport, with the improvements thereon. The consideration for the lot was $2,500, for which Adams gave his negotiable promissory note, secured by special mortgage and
 
 *631
 
 vendor’s privilege on the property purchased. The date of maturity of the note was December 17, 1929.
 

 On July 19, 1927, Adams sold the property to M. M. Silbemagle for $700 cash and the assumption by Silbernagle of the note Adams had executed as consideration for the property.
 

 Plaintiff acquired the foregoing note some time before Silbernagle assumed it, and in May, 1932, brought the present suit against Adams and Silbernagle, praying for judgment against them in solido, with recognition and enforcement of the special mortgage and vendor’s lien on the property purchased by Adams and resold by him to Silbernagle.
 

 Adams answered the suit by averring that he was released from the note for the following reasons:
 

 (1) Because plaintiff, as holder of the note, had extended to Silbernagle, by agreement, time for its payment, and in fact had, by oral agreement, consented to permit him to pay the note in monthly installments of $50 and then $25, and by such agreement had materially altered the note, all without his (Adams’) consent or knowledge.
 

 (2) Because plaintiff, as holder of the note, by her laches and conduct, in failing to collect or sue upon, it, at a time when Silbernagle could have paid the note or it could easily have been realized upon by suit against him, has estopped herself from demanding personal judgment against him (Adams) for the amount thereof.
 

 After a hearing and rehearing below, judgment was rendered in favor of Adams rejecting plaintiff’s demand for a personal judgment against Adams, but ordering the property sold to satisfy the mortgage note. Plaintiff has appealed suspensively from the judgment.
 

 The evidence received upon the trial, especially the letters from plaintiff’s agent, namely, her husband, to Silbernagle, shows, we think, that plaintiff, through her agent, extended the time of payment of the note, and, in fact, virtually converted the note by an oral agreement into a note payable in installments of $50 a month. In one of the letters plaintiff’s agent says: “I must insist upon the compliance with your
 
 agreement
 
 and require you to make good the promised payments for the months of April and June, and to take' care of the current payment for the month of July.” (Italics ours.) In another letter to Silbemagle, plaintiff’s agent refers to Silbernagle’s neglect to make his monthly payments and calls his attention to the number of payments he had made for 1930 and 1931, and asked for payment of the April installment of $50, and cautioning him to be prepared to meet his May installment of $50.
 

 This extension or change of the time of payment of the note into monthly installments was done without consulting Adams, and without his knowledge and consent. The first that Adams knew of the arrangement, so far as appears from the record, was-shortly before this suit was filed, when plaintiff’s agent wrote Adams, under date of March 7, 1932, saying, among other things, that, unless he consented to further delay in payment, he would not permit the note to continue to run. Adams did not give his consent.
 

 
 *633
 
 The arrangement with Silbernagle was in effect for many months; some two years and more had elapsed between the original maturity of the note and the date suit was filed. From the time of the arrangement with Silbernagle until shortly before the suit was filed no demands were made by plaintiff on Adams. In the meantime Silbernagle grew in worse condition financially up to the time suit was filed, when he was virtually insolvent, and, in fact, was adjudged a bankrupt a month later.
 

 Had suit been filed against Silbernagle when the note matured in December, 1929, or when the arrangement with him was made in May, 1930, Silbernagle, at either time, had sufficient assets to justify the conclusion that payment could have been enforced.
 

 The case of Isaacs v. Van Hoose, 171 La. 676, 131 So. 845, 847, is upon all fours with the present case, and, unless we should conclude to overrule it, is decisive of this case. It is there said:
 

 “It is conceded that when the Taylors assumed the payment of the mortgage debt they became primary obligors and bound themselves in solido with the maker of the notes. As a matter of fact, the Taylors in accepting the deed from Van Hoose expressly declared that they assumed the mortgage debt in solido with the said Van Hoose, and the plaintiffs in their foreclosure against the Taylors alleged that the said Taylors had bound themselves in solido with Van Hoose for the payment of the debt.
 

 “The Taylors therefore were not only primary obligors in solido with Van Hoose for the - payment of the debt to the holders of the notes, but they were likewise debtors of Van Hoose for the unpaid portion of the price which they agreed to pay in assuming the debt due to the plaintiffs.
 

 “In these circumsfances there can be no doubt that on the payment of the debt by Van Hoose to the plaintiffs he would have been legally subrogated to all of the rights of his vendors against the Taylors..
 

 “In the case of Gay v. Blanchard, 32 La. Ann. 497, it was said:
 

 “ ‘We take the rule to be that where two persons are bound to a third, for the same debt, and where one of these obligors has, upon payment of the debt, a right of subrogation thereto, and of recourse for the amount paid, upon his co-obligor, any contract between the creditor and the ultimate debtor, whereby delay is granted, * * * will discharge the obligor entitled to such recourse arid subrogation if his consent be not obtained. The creditor in such case must maintain a position which will enable him to subrogate the party paying to all the original rights, privileges, and actions incident to the debt.’
 

 “In the same case on rehearing it was said that where the obligors are bound by separate contracts to the creditor for the same debt, the creditor must have accepted both obligations and be privy to, and have knowledge of, the contract out of which grows the right of recourse of one of the debtors upon the other.
 

 “In the instant case the plaintiffs not only had knowledge of the contract between Van Hoose and the Taylors [as is the ease here], but they accepted that contract treated with
 
 *635
 
 the Taylors as their debtor in extending the time for the payment of the debt, and proceeded against them in the foreclosure on the mortgage property.
 

 “Under the rule of jurisprudence referred to, there can be no doubt that Van Hoose had the legal right to have the mortgage debt promptly paid at the time stated in the •notes and the extension of time without his consent not only destroyed his right of recourse, but imposed upon him the additional obligation to pay an additional interest on the unmatured notes for the period of extension.
 

 “It is no answer to say that Van Hoose could have preserved his right of subrogation by paying the notes at their original maturity.
 

 • “What was said in the Gay Case is very pertinent here. It may be that Van Hoose on payment of the notes could have enforced his mortgage against the Taylors, notwithstanding the agreement of extension to which he was no party, but it is manifest that the contract between, the Isaacs and the Taylors in extending the plaintiffs’ mortgage was binding on Van Hoose and deprived him of his subrogation and legal right to proceed on the original mortgage debt for at least two years.
 

 “As was the result in the Gay Case, so we say here, the extension granted the Taylors operated under the law a discharge of Van Hoose.”
 

 Plaintiffs cited authorities- in that case, as the plaintiff has done in this case, to show that the weight of authority in other states, since the passage of the Negotiable instruments Law (Act No. 64 of 1904), is to the contrary, but the court replied, referring to that law, saying: “We have not found from a careful study of the statute referred to that its provisions supersede the rule adopted by our own jurisprudence.”
 

 We are unable to differentiate this case from the Isaacs Case, and we do not feel. justified in overruling the Isaacs Case. The Isaacs Case being decisive of this case, we must hold that the judgment of the lower court, refusing to render a personal judgment against Adams, because of his discharge, is correct.
 

 The judgment is affirmed.
 

 ST. PAUL, J., absent.