[L. A. No. 15897.   In Bank.—December 31, 1936.]

MORTGAGE GUARANTEE COMPANY (a Corporation) et al., Appellants, v. ALBERT H. CHOTINER et al., Respondents.

Alvan M. Palmer and Harvey A. Harkness for Appellants.

Charles J. Katz and Alfred Gitelson for Respondents.

THOMPSON, J.—On August 26, 1927, the Chotiner Building Corporation executed a negotiable promissory note for $70,000 payable to the Fidelity Savings & Loan Association. The note was secured by a deed of trust of real property. At the same time the defendants Albert H. Chotiner, Albert J. Chotiner and Gertrude Chotiner executed a written contract of guaranty on the back of the note, which read:

''For value received, I guarantee payment of the within note, with interest, in accordance with its terms. I waive demand, or notice of non-payment, and I authorize extensions without notice.

''If suit is brought to enforce this guarantee, I will pay attorney's fees and costs of suit.''

The real property covered by the deed of trust was conveyed by the corporation to William E. and Mary Johnson and subsequently conveyed by the Johnsons to Frederick M. Duhig, both conveyances being subject to the trust deed. Prior to maturity, the note was transferred by endorsement to the Mortgage Guarantee Company and assigned by it in trust to the Title Insurance and Trust Company. There is no contention that the plaintiffs are not holders in due course. The Mortgage Guarantee Company made binding extension agreements both with the Johnsons and with Duhig without the knowledge or consent of the maker or the guarantors. On October 20, 1934, the real property was sold at trustee's sale and this suit is brought against the guarantors for the stipulated deficiency of $17,166.39.

Judgment went for the defendant guarantors upon findings that the guaranty was made without consideration;

that it was understood orally between the guarantors and the original payee that the consent to extensions contained in the guaranty did not authorize extensions to any person other than the maker; that the Mortgage Guarantee Company had entered into binding extension agreements with the successive grantees of the realty with the knowledge and consent of its coplaintiff and without the knowledge or consent of the maker or the guarantors; that the Mortgage Guarantee Company did, for a valuable consideration, by agreements with the Johnsons and Duhig alter the provisions of the note so that principal payments due on August 26, 1932, August 26, 1933, and August 26, 1934, in the total amount of $7,000, were not due on those dates but on August 26, 1937, and could not be paid before that date and that the guarantors had not been indemnified.

Appellants base their plea for a reversal upon the contentions that, the guaranty having been executed coincidentally with the note, a separate consideration was unnecessary; second, that it was error to permit parol testimony to limit the consent to extensions to those made to the maker only and, third, that, under the Negotiable Instruments Law, adopted in this state in 1917, the maker of the note is not discharged by extensions to his grantees, hence the release of the Chotiner Holding Company could not be relied upon to exonerate its guarantors. It was for the purpose of considering this third contention that a hearing in this court was granted after decision by the District Court of Appeal, Second District, Division Two. On the first two points we are satisfied with the disposition made by the District Court of Appeal and we hereby adopt as the opinion of this court that portion of the opinion of Mr. Justice Gould, sitting *pro tempore*, which deals therewith:

■ "Inasmuch as the execution of the note and guarantee was coincidental, no other consideration need exist. (Civ. Code, sec. 2792.) Furthermore, the guarantors were officers and stockholders of the family corporation which executed the note, and, therefore, they derived a benefit from the transaction, of itself a good consideration for the guaranty. (*Seth* v. *Lew Hing*, 125 Cal. App. 729 [14 Pac. (2d) 537, 15 Pac. (2d) 190].)

■ "Respondents claimed that the wording of the guaranty rendered its terms uncertain and ambiguous, and they

were permitted over the objection of appellants to introduce testimony of a conversation had between them and a representative of the payee of the note at the time the document was signed, to the effect that the 'extensions without notice' referred to in the guaranty 'applied only to, and only authorized extensions to the maker'. The trial court made a finding in accordance with this evidence, which would effectually preclude appellants from recovery because several extensions of the obligations of the note were granted, not to the original maker thereof but to its successors. In permitting this parol testimony to vary and explain the terms of the written guaranty we believe the trial court erred.

"The wording of the instrument is plain, free from ambiguity, easily understood and presents no scope for explanation upon the ground of uncertainty. (*First National Bank* v. *Spalding*, 177 Cal. 217 [170 Pac. 407].) Respondents expressly consented in broad and unequivocal language to extensions of time without qualification of any kind, and it must be held that they cannot rely upon any asserted ambiguity in the guaranty in this case to avoid its consequences, nor can parol evidence be invoked to vary or alter the plain terms of the writing. ■ Moreover, no adequate showing was made that the person purporting to deal with respondents respecting the alleged restriction upon the extensions had authority to speak for the corporation payee of the note, or was even an official of or in any way authorized to bind the corporation as to any verbal understanding with relation to the written guaranty. Obviously, evidence should have been produced as to the authority of the person assertedly so speaking for the corporation. (*Anderson* v. *Standard Lumber Co.*, 64 Cal. App. 410 [221 Pac. 686].)"

While we are in accord with the views expressed by the District Court with regard to the second point, we are of the opinion that it is not necessarily decisive of the question. ■ We have been referred to no case in this jurisdiction directly upon the point, but in *Kaufman* v. *Penn Mut. Life Ins. Co.*, 64 Fed. (2d) 160 [62 App. D. C. 37], it is said to be the established weight of authority both in this country and in England, that an extension of time granted by the holder of a note to a third person, not a party to the instrument, does not release the guarantor even though

made without his knowledge or consent, for the reason that it does not alter the terms of the note as between the creditor and the principal debtor, hence the guarantor loses none of the rights secured to him as against either the creditor or principal because of the extension. Therefore, if there is, in this case, no alteration of the obligation of the maker of the note by reason of the extensions to the grantees of the hypothecated realty, the guarantors are not released. The question of whether there is an alteration of the maker's obligation by reason of the extensions to the grantees so that the guarantors are exonerated (Civ. Code, sec. 2819) brings us to a consideration of the third contention of the appellants.

It has been held in this state that a conveyance of mortgaged realty subject to the encumbrance, but without assumption of the mortgage debt, creates a relationship between the grantee and the mortgagor analogous to that between principal and surety so that an extension of time of payment of the mortgage debt made to the grantee without the consent of the mortgagor materially alters the original obligation of the mortgagor and releases him from further liability. (*Braun* v. *Crew*, 183 Cal. 728 [192 Pac. 531].) It is urged by the appellants that this rule has been abrogated by the adoption of the Uniform Negotiable Instruments Law (Stats. 1917, p. 1533). The respondents insist that the law remains the same, citing cases decided since 1917 following the rule of *Braun* v. *Crew supra* but without discussion of the effect of the provisions of the Negotiable Instruments Law upon that rule. *Braun* v. *Crew, supra* which established the rule, involved an instrument executed before the Negotiable Instruments Law was in effect. Nor can *Jensen* v. *Burton*, 117 Cal. App. 66 [3 Pac. (2d) 324], and *Birkhofer* v. *Krumm*, 4 Cal. App. (2d) 43 [40 Pac. (2d) 553], also relied upon by the respondents, be considered as authority upon the point since it is not considered in either opinion. (*Oakland Paving Co.* v. *Whittell Realty Co.*, 185 Cal. 113 [195 Pac. 1058] ; *Alferitz* v. *Borgwardt*, 126 Cal. 201 [58 Pac. 460].)

The question of the availability of suretyship defenses to one who appears as primarily liable upon the face of a negotiable instrument has long been the subject of much discussion by and disagreement between the courts and

legal writers. This problem most frequently arises in the case of the accommodation maker and it is safe to say that the majority of jurisdictions in which the question has been decided adhere to the rule that suretyship defenses cannot be set up by an accommodation maker of a negotiable note. (*Cellers* v. *Meachem*, 49 Or. 186 [89 Pac. 426, 13 Ann. Cas. 997, 10 L. R. A. (N. S.) 133] ; *Vanderford* v. *Farmers' Bank*, 105 Md. 164 [66 Atl. 47, 10 L. R. A. (N. S.) 129] ; *Wolstenholme* v. *Smith*, 34 Utah, 300 [97 Pac. 329] ; *Richards* v. *Market Exch. Bank*, 81 Ohio St. 348 [90 N. E. 1000, 26 L. R. A. (N. S.) 99] ; *Bradley Eng. & Mfg. Co.* v. *Heyburn*, 56 Wash. 628 [106 Pac. 170, 134 Am. St. Rep. 1127] ; *Union Trust Co.* v. *McGinty*, 212 Mass. 205 [98 N. E. 679, Ann. Cas. 1913C, 525] ; *Cowan* v. *Ramsey*, 15 Ariz. 533 [140 Pac. 501] ; *First Nat. Bank* v. *Meyer*, 30 N. D. 388 [152 N. W. 657] ; *Baird* v. *Herr*, 64 N. D. 572 [254 N. W. 555] ; *Citizens Bank of Belton* v. *Bowdon*, 98 Kan. 140 [157 Pac. 429] ; *Graham* v. *Shepherd*, 136 Tenn. 418 [189 S. W. 867, Ann. Cas. 1918E, 804] ; *First State Bank of Hilger* v. *Lang*, 55 Mont. 146 [174 Pac. 597, 9 A. L. R. 1139] ; *Merchants' Nat. Bank* v. *Smith*, 59 Mont. 280 [196 Pac. 523, 15 A. L. R. 430] ; *Fox* v. *Terre Haute Nat. Bank*, 78 Ind. App. 666 [129 N. E. 33] ; *Hall* v. *Farmers' Bank*, 74 Colo. 165 [220 Pac. 237] ; *Vernon Center Bank* v. *Mangelson*, 166 Minn. 472 [208 N. W. 186, 48 A. L. R. 710] ; *Rosendale State Bank* v. *Holland*, 195 Wis. 131 [217 N. W. 645] ; *West Rutland Trust Co.* v. *Houston*, 104 Vt. 204 [158 Atl. 69, 80 A. L. R. 664] ; *Marshall County Bank* v. *Fonner*, 113 W. Va. 451 [168 S. E. 375].)

The majority rule is grounded upon the legislative intent to supersede the general law of suretyship as to negotiable paper by the adoption of the Negotiable Instruments Law. This intention of the legislatures is arrived at by the application to sections 119 and 120 of the Uniform Act (sections 3200 and 3201 of our Civil Code) of the doctrine of *expressio unius est exclusio alterius*, a doctrine said by the cases to be in harmony with the purposes of the act, uniformity and codification of the entire subject of negotiable paper.

By section 29 (Civ. Code, sec. 3110) an accommodation party is liable to a holder for value, even though the holder, at the time of taking, knew of his accommodation character.

By section 192 (Civ. Code, sec. 3266a) the accommodation maker is a party primarily liable, since he is one who by its terms is absolutely required to pay the instrument, all others being secondarily liable. There is no section specifically dealing with the discharge of persons primarily liable but section 119 (Civ. Code, sec. 3200) provides:

"A negotiable instrument is discharged:

"(1) By payment in due course by or on behalf of the principal debtor;

"(2) By payment in due course by the party accommodated, where the instrument is made or accepted for accommodation;

"(3) By the intentional cancellation thereof by the holder;

"(4) By any other act which will discharge a simple contract for the payment of money;

"(5) When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

Section 120 (Civ. Code, sec. 3201) provides for the discharge of persons secondarily liable:

"(1) By any act which discharges the instrument;

"(2) By the intentional cancellation of his signature by the holder;

"(3) By the discharge of a prior party;

"(4) By a valid tender of payment made by a prior party;

"(5) By a release of the principal debtor, unless the holder's right of recourse against the party secondarily liable is expressly reserved;

"(6) By any agreement binding upon the holder to extend the time of payment, or to postpone the holder's right to enforce the instrument, unless made with the assent of the party secondarily liable, or unless the right of recourse against such party is expressly reserved."

It is reasoned that section 119, which covers discharge of the instrument also covers discharge of the primary parties, the greater including the less, and that, together, these sections cover the whole field of who are parties primarily and secondarily liable and the manner in which they may be discharged from liability, the enumerated methods of discharge being exclusive. It is argued that the inclusion of some suretyship defenses in the methods of discharge of

secondary parties in section 120 and the omission of any reference to such defenses from section 119 shows a clear intent to abrogate such defenses as to one who appears upon the face of the paper as primarily liable. An additional ground for their conclusion given by the later majority rule cases is that the act was adopted after this interpretation had been put upon it in the majority of jurisdictions considering the question and, further, the paramount purpose of uniformity was a compelling reason for following the majority rule.

The minority rule, that, despite the adoption of the Uniform Negotiable Instruments Law, it is still open to one who appears as primarily liable upon a negotiable note to show that in reality he is an accommodation maker or surety and has a defense previously recognized under suretyship principles, is usually based upon the reasoning that the payee is not a holder in due course, hence, as between the original parties, under section 58 (Civ. Code, sec. 3139), the same defenses are available as if the instrument were non-negotiable. (*Fullerton Lumber Co.* v. *Snouffer*, 139 Iowa, 176 [117 N. W. 50] ; *Strother* v. *Wilkinson*, 90 Okl. 247 [216 Pac. 436], overruling the contrary holding in *Oklahoma State Bank* v. *Seaton*, 69 Okl. 99 [170 Pac. 477] ; *Newkirk* v. *Hays*, 220 Mo. App. 514 [275 S. W. 964], also overruling earlier cases; *J. I. Case Thresh. Mach. Co.* v. *Howth*, 116 Tex. 434 [293 S. W. 800] ; *Hardin Trust Co.* v. *Wollard*, 119 Neb. 307 [228 N. W. 866].) South Dakota, however, reaches the same result by holding that section 119 does not enumerate the exclusive means of discharge of primary parties, that subdivision (4) thereof authorizes the release of the surety by any act which will discharge a simple contract for the payment of money and the Negotiable Instruments Law neither succeeded nor superseded the South Dakota code provisions with relation to the release of sureties, which were passed by the same legislature which adopted the Uniform Act. (*Smith* v. *Blackford*, 56 S. D. 360 [228 N. W. 466].) The cases in support of both rules are collected and discussed in notes in 10 L. R. A. (N. S.) 129; 26 L. R. A. (N. S.) 99; 48 A. L. R. 715; 65 A. L. R. 1425; 72 A. L. R. 389.

It should be pointed out that the alignment of the authorities upon one side or the other of this question is not

so clear-cut as the foregoing classification would indicate. While the cases so far cited have dealt almost entirely with the defense of an extension of time without the consent of the accommodation maker, the rulings have in general been broad enough to include the entire category of suretyship defenses. Conflict and confusion appear in some of the jurisdictions when a less technical defense is pleaded, when the question is one of subrogation or the suretyship relation arises out of the transfer of mortgaged property. Kentucky at first adopted the majority rule. (*First State Bank of Nortonville* v. *Williams,* 164 Ky. 143 [175 S. W. 10] ; *Elsey* v. *Peoples Bank of Bardwell,* 168 Ky. 701 [182 S. W. 873] ; *Smith* v. *National Bank,* 179 Ky. 88 [200 S. W. 44].) Later Kentucky cases hold that the defense of release of security is good as between the original parties, since the payee is not a holder in due course and the act does not treat at all of this defense. (*Rommel Bros.* v. *Clark,* 255 Ky. 554 [74 S. W. (2d) 933] ; *Southern Nat. Life Realty Corp.* v. *Peoples Bank of Bardstown,* 178 Ky. 80 [198 S. W. 543], overruling *Elsey* v. *Peoples Bank of Bardwell, supra.*) In *Peoples State Bank* v. *Atwood,* 212 Ky. 462 [279 S. W. 670], it is said that the question is an open one. For a fuller discussion of the Kentucky decisions see 22 Kentucky Law Journal, page 371. *Oklahoma State Bank* v. *Seaton,* 69 Okl. 99 [170 Pac. 477], following the majority rule, involved the defense of an extension of time without the consent of an accommodation co-maker. *Strother* v. *Wilkinson,* 90 Okl. 247 [216 Pac. 436], overruling the Seaton case as to the original parties to the instrument, involved the release of security. The Supreme Court of Ohio, while following the majority rule as to extensions of time, applied section 119 (4) to hold an accommodation maker was exonerated by the release of the mortgaged property. (*Goodman* v. *Goodman,* 127 Ohio St. 223 [187 N. E. 777], commented on in 43 Yale L. J. 1015 and 18 Minn. L. Rev. 473.)

The following jurisdictions, all following the majority rule on the general question of the availability of suretyship defenses to an accommodation maker, have considered the question of the right of the accommodation party to subrogation under the Negotiable Instruments Law. Vermont and Maryland hold that the Negotiable Instruments Law only affects the relation of the accommodation maker to the

holder for value and does not operate on the relationship between the makers themselves, that recovery by the accommodation maker from the accommodated party rests upon an implied promise of reimbursement which is separate from and independent of the promise in the instrument, and that this is a situation not covered by the Uniform Act so the previously existing rules control under section 196 (Civ. Code, sec. 3266d), providing that in omitted cases the rules of the law merchant shall govern. (*Clifford* v. *W. Hartford Creamery Co., Inc.*, 103 Vt. 229 [153 Atl. 205]; *Bellows* v. *Blake,* 106 Vt. 204 [170 Atl. 906]; *Fuhrman* v. *Fuhrman,* 115 Md. 436 [80 Atl. 1082].) Kansas and Tennessee stand on the proposition that subrogation is a right which is only available to one who has paid the debt of another and does not exist in favor of one who discharges a debt for which he was himself primarily liable. (*Spire* v. *Spire,* 104 Kan. 501 [180 Pac. 209]; *Merchants' Bank & Trust Co.* v. *Bushnell,* 142 Tenn. 275 [218 S. W. 709].) A late Wisconsin case, *Strelitz* v. *First Nat. Bank,* (1936) 220 Wis. 443 [264 N. W. 649], is in accord with the Kansas and Tennessee cases but fails to notice earlier Wisconsin cases to the contrary, which are, however, pointed out in the dissenting opinion. (See 79 U. of Pa. L. Rev. 976.)

Coming to the cases (like that now before us for determination) in which the maker becomes, in substance, a surety by a transfer of the mortgaged property, the decisions are no more uniform. The majority rule was applied, refusing to release the maker where there had been an extension of time to the grantee without his consent, in *Continental Mutual Sav. Bank* v. *Elliott,* 166 Wash. 283 [6 Pac. (2d) 638, 81 A. L. R. 1005], *Wright* v. *Bank of Chattanooga,* 166 Tenn. 4 [57 S. W. (2d) 800], *Sloan* v. *Gates,* (1933) 166 Tenn. 446 [62 S. W. (2d) 52], and *Peter* v. *Finzer,* 116 Neb. 380 [217 N. W. 612, 65 A. L. R. 1419]. But see a later Nebraska case, cited with the minority, holding, without noticing the Finzer case, that a payee is not a holder in due course so the rule does not apply as between the original parties. (*Hardin Trust Co.* v. *Wollard, supra.*) The minority rule has been applied to allow a release by South Dakota and Oklahoma, both minority jurisdictions. (*Zastrow* v. *Knight,* 56 S. D. 554 [229 N. W. 925, 72 A. L. R. 379]; *Citizens' Bank of Coleman* v. *Rosenwald,* (1934) 63

S. D. 50 [256 N. W. 264]; *Strother* v. *Wilkinson,* 90 Okl. 247 [216 Pac. 436].) In some jurisdictions, however, a distinction is made between an unsecured negotiable note and a note secured by a mortgage on the ground that there is no provision of the Negotiable Instruments Law covering that precise situation, so, under section 196 of the act, the court is free to follow its own jurisprudence. (*Jefferson County Bank* v. *Erickson,* 188 Minn. 354 [247 N. W. 245]; *Prudential Ins. Co.* v. *Bass,* 357 Ill. 72 [191 N. E. 284]; *Passman* v. *Budnizky,* 284 Ill. App. 533 [1 N. E. (2d) 707]; *Isaacs* v. *Van Hoose,* 171 La. 676 [131 So. 845]; *Wilkinson* v. *Adams,* 179 La. 630 [154 So. 630].) Of these three jurisdictions, Minnesota is definitely committed to the majority rule in the unsecured note cases. (*Vernon Center Bank* v. *Mangelson, supra.*) It does not seem to us that this distinction, employed to take the mortgage cases out of the majority rule, is a sound one. Either the provisions for discharge contained in the Negotiable Instruments Law are exclusive or they are not, and, in consequence, it can or it cannot be shown that there is another relationship between the parties which was known to the holder at the time he did the act relied upon as a ground of discharge. The manner in which the relationship arose seems to us immaterial as a matter of logic, particularly in view of the majority reasoning that it was the legislative intent in adopting the Uniform Act to abrogate all existing suretyship law with reference to negotiable instruments.

The majority view is severely criticized by many legal writers on the subject. It is supported by Daniel (Negotiable Instruments, 7th ed. (1933), vol. 3, sec. 1511, p. 1558), on the sole ground that, as a practical matter, uniformity is greatly to be desired, and by Crawford, by whom the act was drawn (Negotiable Instruments Law, Rev. 4th ed. (1918), p. 201) on the ground that one who signs negotiable paper as a primary party cannot complain if he is treated as being in fact what he appears to be on the face of the paper, and, further, that the contrary rule is based on theoretical rather than practical reasons and is likely to prove a trap for the unwary. Other than these, the discussions examined unite in its condemnation as an unnecessarily strict interpretation of the Negotiable Instruments Law, while conced-

ing that it is probably so well entrenched that an amendment would be required to effect a change.

It is said by Professor Street that the reasoning back of the majority rule rests upon the "fallacy of imputed omniscience", that the application of the doctrine of *expressio unius est exclusio alterius* does violence to the plain language of the statute since section 196 provides that in any case not provided for the rules of the law merchant shall govern, thus demonstrating that it was not intended to be a complete codification of the subject. (11 Law Notes, 105.) Most writers are in agreement that the situation is either covered by subdivision (4) of section 119 (providing that the instrument is discharged "by any other act which will discharge a simple contract for the payment of money") or is an omitted case, being neither the discharge of the instrument (sec. 119) nor the discharge of a person secondarily liable (sec. 120) and, under section 196 is governed by the law merchant.

Additional criticisms of the deduction that the methods of discharge enumerated in sections 119 and 120 are exclusive are an elaboration of the argument that the Negotiable Instruments Law was not intended to cover the entire subject of suretyship and that it is erroneous to draw the conclusion that it was from the incomplete provisions respecting suretyship contained in section 120 (10 Ill. L. Rev. 277) and that at least three other sections (51, 122 and 124) deal with methods of discharge. (Brannan, Negotiable Instruments Law, 5th ed. (1932), p. 888.)

Aside from the criticism that the statute itself does not compel the overruling of the existing suretyship law, the most cogent objection to the majority rule is that the rights of the surety do not depend upon the face of the paper but on outside equities and a recognition thereof would not actually obstruct negotiability or impair circulation since the rule only applies where the holder has knowledge of the principal and surety relation between the obligors and has acted in disregard of the equities arising from the contract of suretyship. (Brannan, op. cit. *supra,* p. 885; 30 Harv. L. Rev. 141; 19 Marq. L. Rev. 122. See, also, 42 Harv. L. Rev. 136; 12 Minn. L. Rev. 668; 6 Neb. L. Rev. 417; 26 Mich. L. Rev. 929; 28 Mich. L. Rev. 930; 31 Am. Bar Rep. 1164; 59 U. of Pa. L. Rev. 532; 13 St. Louis L. Rev. 69

and 215; 2 U. of Cinn. L. Rev. 441; 22 Ky. L. Rev. 371; 11 Tenn. L. Rev. 285; 14 Or. L. Rev. 273; 10 Tul. L. Rev. 139; 17 Minn. L. Rev. 220; 2 Idaho L. Rev. 143.)

Although we may entertain considerable doubt of the soundness of the reasoning upon which the majority rule depends, we feel compelled, in the interest of uniformity, to follow the great weight of authority and hold that one who appears as a primary party upon the face of a negotiable note, although in actuality a surety or accommodation maker, is not released by a binding extension agreement with the principal debtor made without his consent. We are the less reluctant to so hold because of the fact that the defense of an extension of time is one of the more technical suretyship defenses, the injuries resulting to the surety by reason thereof being more likely to be theoretical than real. (Hon. Benjamin N. Cardozo, A Ministry of Justice, 35 Harv. L. Rev. 113, 117; Raymond, Suretyship at Law Merchant, 30 Harv. L. Rev. 157.) And, while we see little room under the majority rule for logical distinctions between the various suretyship defenses (for reason surely demands that, if any existing suretyship defenses are held to be abrogated by means of interpreting sections 119 and 120 as exclusive, the Negotiable Instruments Law must be held to have superseded all such defenses not enumerated in those sections) the ruling herein is strictly limited to the situation now before us and the question of the effect of the adoption of the Negotiable Instruments Law upon other existing suretyship defenses is intentionally left open. (See 38 Harv. L. Rev. 954 and 43 Yale L. Rev. 1015.)

The mortgagor was therefore not released by the extensions given without its consent to its grantees, nor were the guarantors, the defendants here, exonerated.

The judgment is reversed.

Shenk, J., Waste, C. J., Langdon, J., and Seawell, J., concurred.