## BAKER et al. v. RECONSTRUCTION FINANCE CORPORATION.

### No. 9316.

Circuit Court of Appeals, Fifth Circuit.

Jan. 29, 1940.

John G. Baker, of Orlando, Fla., for appellants.

J. S. Diver, of Jacksonville, Fla., and George P. Garrett and Troy C. Musselwhite, both of Orlando, Fla., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, *Circuit Judge.*

This litigation began in 1935 with a bill on the part of Reconstruction Finance Corporation to foreclose a mortgage given by John McCulloch and Arthur C. Marshall to secure a note for $50,000 payable to First National Bank & Trust Company in Orlando, Florida. After pleading to it McCulloch died March 12, 1936, testate. The bill as to him was revived on Aug. 31, 1938, by substituting his executor, John G. Baker, as a defendant. To an amended bill answer was made in behalf of the execu-

tor and the other defendants, admitting most of the facts charged but setting up special defenses—particularly that the note and mortgage, given for accommodation, had been fully discharged before Reconstruction Finance Corporation took them after due and with knowledge of the facts; and that the Corporation had for a consideration extended the time of payment of its loan, thereby releasing the liability of McCulloch and Marshall; and that the Corporation, having filed a claim against the estate of McCulloch in the probate court and not followed.it up by a suit within the time required by the Florida statute of non-claim, the estate was relieved. On a motion for summary judgment the mortgage was foreclosed for the amount of the note and sale ordered, but no deficiency liability was adjudged. The mortgagors and those connected with them appeal.

The essential facts touching the present validity of the mortgage are these: McCulloch and Marshall were in 1932, and since, directors and stockholders in First National Bank and Trust Company in Orlando. Their Bank owed Federal Reserve Bank a large sum and needed more money. To obtain it they joined three other directors in a plan by which individual notes secured by mortgages should be given their Bank to be used by it with Federal Reserve Bank as additional collateral for past and future advances, the several directors to receive nothing for their notes issued as an accommodation to their Bank. McCulloch and Marshall accordingly on June 29, 1932, gave the Bank a negotiable note for $50,000 due in six months and secured by the mortgage in controversy duly attested and recorded. The other directors also gave their notes with security as agreed. All were placed with Federal Reserve Bank, which gave the additional credit desired. The Bank in Orlando suspended business March 6, 1933, and was not reopened, but a conservator was appointed. It owed Federal Reserve Bank $181,601. The Conservator arranged with Reconstruction Finance Corporation to borrow $525,000 to pay Federal Reserve Bank and some other obligations, and to provide a fund for a dividend to depositors, offering among other collateral the directors' notes still in the hands of Federal Reserve Bank. On Jan. 22, 1934, McCulloch and Marshall executed a paper under their seals and duly attested by two witnesses, which recited the situation and the proposed loan and covenanted thus: "In consideration of the

premises, and the payment of the sum of $1.00 and other valuable considerations, the parties of the second part do herein and hereby consent to the assignment and transfer of the note and mortgage securing the same hereinabove described, by the party of the first part to the Reconstruction Finance Corporation as a portion of the collateral to secure said loan of $525,000, if, as and when the money now due the Federal Reserve Bank of Orlando by the First National Bank and Trust Company of Orlando is paid in full and the collateral consisting of a note by the parties of the second part and a mortgage securing the same is returned to the party of the first part as Conservator of First National Bank and Trust Company in Orlando." On Feb. 12, 1934, a similarly executed agreement was made between the same parties that the note and mortgage, after the loan from Reconstruction Finance Corporation has been paid in full, should revert to and be held by the Conservator till all indebtedness to the Bank and assessments of the makers as stockholders shall have been paid.

On Feb. 14, 1934, Reconstruction Finance Corporation as a part of the loan of $525,000, sent the Comptroller of the Currency a check for $181,601, the exact amount due Federal Reserve Bank, which was paid to it; the Federal Reserve Bank having assigned the note and mortgage to the Conservator, and he having already assigned them to Reconstruction Finance Corporation as part of Reconstruction Finance Corporation's security. The loan of Reconstruction Finance Corporation has been reduced now to about $114,880. The present foreclosure is on account of this balance. Reconstruction Finance Corporation knew the history of the note and mortgage as above recited, and acted on the faith of the above quoted consent.

■ The contention that the note and mortgage were discharged when the debt due Federal Reserve Bank was paid, and that they could not be revived and reissued to Reconstruction Finance Corporation we overrule. They were accommodation paper in origin, without value moving to the makers. Negotiable Instruments Law, Comp.Gen.Laws of Florida, § 6789. But they were not without consideration, for consideration may be found not only in benefit to the promisor but also in detriment incurred by the promisee. The credit given by Federal Reserve Bank to the Bank in Orlando was the consideration for the

note and mortgage. And since the makers were stockholders there was also a benefit to them. Compare Brelsford. v. Whitney Trust & Savings Bank, 5 Cir., 69 F.2d 491; Bohning 'v. Caldwell, 5 Cir., 10 F.2d 298. Had the Federal Reserve Bank been simply paid by the Bank in Orlando, the accommodation mortgage would have been discharged as contended, but that did not happen. The Bank did not pay the Federal Reserve Bank simply, but the Reconstruction Finance Corporation sent its check direct in payment under an agreement in which these makers had joined, that this collateral should not be marked paid or cancelled but should go to Reconstruction Finance Corporation as live collateral. The note and mortgage were assigned in exact accordance with the covenant of the makers above quoted. The rights of no third parties being involved, we see no reason why the note and mortgage should be held defunct. Even if there had been no assignment from Federal Reserve 'Bank, but a mere surrender of them, the makers could authorize their use again as accommodation paper with the Reconstruction Finance Corporation, just as they had done with the Federal Reserve Bank at the beginning. Klaiber v. Jorcke, Mo.App., 239 S.W. 880. The authority they gave is even under seal and attested as a mortgage and capable of record with it should it be re-recorded. That the note was past due when thus issued made it payable on demand. Comp.Gen.Laws § 6767. We have no question here whether as to third parties the old recordation would hold good. We find no cause for which in a court of equity the makers ought to be relieved, notwithstanding Reconstruction Finance Corporation knew all the facts or was on notice of them by the past due state of the note.

■ Reconstruction Finance Corporation did not press payment of the $525,000 loan at its maturity, but made a resolution on Sept. 15, 1934, through its board of directors intended to postpone the maturity date from June 1, 1934, to Jan. 1, 1935, without the consent of McCulloch and Marshall. They contend that they stood, to the amount of their note and mortgage, as sureties on the debt due Reconstruction Finance Corporation and are discharged by the extension of its maturity. Whether the provisions of the negotiable instruments act of Florida permit them to contend that they are sureties we will not enquire.[1] If sureties, there was no consideration for the extension, and a voluntary indulgence does not prejudice the sureties for it can be terminated at any time. Fort Pierce Bank & Trust Co. v. Sewall, 113 Fla. 811, 152 So. 617. There is put forward as a consideration that Reconstruction Finance Corporation would escape the cost and trouble of realizing on the other collateral during the extension; but there is no evidence of any new agreement to that effect. On the contrary the original agreement for the loan provided that the Conservator was to "administer, supervise, preserve, protect and realize upon all collateral", and to pay all charges and expenses thereabout. That he continued to do this would be no new consideration for the extension. Reconstruction Finance Corporation could at the instance of McCulloch and Marshall have disregarded it. They could have tendered payment of the principal debt to Reconstruction Finance Corporation at any time after the original maturity date and proceeded against their Bank, and their risk was not increased by the voluntary indulgence.

■ Reconstruction Finance Corporation after McCulloch's death in due time filed in the probate court a claim for the debt in controversy, but did not file suit on the note within the time limited by the Florida statute of non-claim. Comp.Gen. Laws Supp. §§ 5541(92), 5541(94). We presume that no claim for money could now be asserted against the executor and the general estate. But the statute expressly says no claim need be filed on a mortgage if the mortgaged property alone is to be pursued, and we think if a claim against the whole estate is filed and not pursued, the mortgage is not thereby forfeited. A mortgagee is not put to an election between the remedy on the note and that on the mortgage but may pursue either or both until satisfaction is had. Though the note be barred the mortgage may be enforced. Especially is this true when foreclosure

---

[1] The Negotiable Instruments Law has been held to forbid one who appears as maker of a negotiable instrument, though for accommodation, to contend as against a holder for value that he is a surety. 11 C.J.S., Bills and Notes, page 289, § 739(b); Union Trust Co. v. McGinty, 212 Mass. 205, 98 N.E. 679, Ann.Cas. 1913C, 525. See Mortgage Guarantee v. Chotiner, 8 Cal.2d 110, 64 P.2d 138, 108 A.L.R. 1080.

had been instituted before the mortgagor's death and jurisdiction of the mortgaged property had been thus taken by a federal court before the jurisdiction of the State probate court attached at all. The federal court could, according to its own rules, make the personal representative a party, as was done here, and proceed with its foreclosure. Compare Wilson v. Alliance Life Ins. Co., 5 Cir., 108 F.2d 150. In the present case no judgment has been made or is proposed against the general assets of McCulloch's estate. The decree of foreclosure need not be certified to the probate court as was done in the case just cited, because the Florida statute expressly says it need not be. Comp.Gen.Laws Supp. § 5541(95).

No error appearing, the judgment is affirmed.